PROVIDENT TRADESMENS BANK & TRUST
CO., ADMINISTRATOR *v.* PATTERSON,
ADMINISTRATOR, ET AL.

No. 28.   Argued November 6–7, 1967.—Decided January 29, 1968.

*Avram G. Adler* argued the cause for petitioner. With him on the brief were *Abraham E. Freedman, J. Willison Smith* and *Bayard M. Graf.*

*Norman Paul Harvey* argued the cause and filed a brief for respondents.

MR. JUSTICE HARLAN delivered the opinion of the Court.

This controversy, involving in its present posture the dismissal of a declaratory judgment action for nonjoinder of an "indispensable" party, began nearly 10 years ago with a traffic accident. An automobile owned by Edward Dutcher, who was not present when the accident occurred, was being driven by Donald Cionci, to whom Dutcher had given the keys. John Lynch and John Harris were passengers. The automobile crossed the median strip of the highway and collided with a truck being driven by Thomas Smith. Cionci, Lynch, and Smith were killed and Harris was severely injured.

Three tort actions were brought. Provident Tradesmens Bank, the administrator of the estate of passenger Lynch and petitioner here, sued the estate of the driver, Cionci, in a diversity action. Smith's administratrix, and Harris in person, each brought a state-court action against the estate of Cionci, Dutcher the owner, and the estate of Lynch. These Smith and Harris actions, for unknown reasons, have never gone to trial and are still pending. The Lynch action against Cionci's estate was settled for $50,000, which the estate of Cionci, being penniless, has never paid.

Dutcher, the owner of the automobile and a defendant in the as yet untried tort actions, had an automobile liability insurance policy with Lumbermens Mutual Casualty Company, a respondent here. That policy had an upper limit of $100,000 for all claims arising out of a

single accident. This fund was potentially subject to two different sorts of claims by the tort plaintiffs. First, Dutcher himself might be held vicariously liable as Cionci's "principal"; the likelihood of such a judgment against Dutcher is a matter of considerable doubt and dispute. Second, the policy by its terms covered the direct liability of any person driving Dutcher's car with Dutcher's "permission."

The insurance company had declined, after notice, to defend in the tort action brought by Lynch's estate against the estate of Cionci, believing that Cionci had not had permission and hence was not covered by the policy. The facts allegedly were that Dutcher had entrusted his car to Cionci, but that Cionci had made a detour from the errand for which Dutcher allowed his car to be taken. The estate of Lynch, armed with its $50,000 liquidated claim against the estate of Cionci, brought the present diversity action for a declaration that Cionci's use of the car had been "with permission" of Dutcher. The only named defendants were the company and the estate of Cionci. The other two tort plaintiffs were joined as plaintiffs. Dutcher, a resident of the State of Pennsylvania as were all the plaintiffs, was not joined either as plaintiff or defendant. The failure to join him was not adverted to at the trial level.

The major question of law contested at trial was a state-law question. The District Court had ruled that, as a matter of the applicable (Pennsylvania) law, the driver of an automobile is presumed to have the permission of the owner. Hence, unless contrary evidence could be introduced, the tort plaintiffs, now declaratory judgment plaintiffs, would be entitled to a directed verdict against the insurance company. The only possible contrary evidence was testimony by Dutcher as to restrictions he had imposed on Cionci's use of the automobile. The two estate plaintiffs claimed, however, that

under the Pennsylvania "Dead Man Rule" Dutcher was incompetent to testify on this matter as against them. The District Court upheld this claim. It ruled that under Pennsylvania law Dutcher was incompetent to testify against an estate if he had an "adverse" interest to that of the estate. It found such adversity in Dutcher's potential need to call upon the insurance fund to pay judgments against himself, and his consequent interest in not having part or all of the fund used to pay judgments against Cionci. The District Court, therefore, directed verdicts in favor of the two estates. Dutcher was, however, allowed to testify as against the live plaintiff, Harris. The jury, nonetheless, found that Cionci had had permission, and hence awarded a verdict to Harris also.

Lumbermens appealed the judgment to the Court of Appeals for the Third Circuit, raising various state-law questions.[1] The Court of Appeals did not reach any of these issues. Instead, after reargument *en banc,* it decided, 5–2, to reverse on two alternative grounds neither of which had been raised in the District Court or by the appellant.

The first of these grounds was that Dutcher was an indispensable party. The court held that the "adverse interests" that had rendered Dutcher incompetent to testify under the Pennsylvania Dead Man Rule also required him to be made a party. The court did not consider whether the fact that a verdict had already been rendered, without objection to the nonjoinder of Dutcher, affected the matter. Nor did it follow the provision of Rule 19 of the Federal Rules of Civil Procedure that findings of "indispensability" must be based on

---

[1] Appellants challenged the District Court's ruling on the Dead Man issue, the fairness of submitting the question as to Harris to a jury that had been directed to find in favor of the two estates whose position was factually indistinguishable, and certain instructions.

stated pragmatic considerations. It held, to the contrary, that the right of a person who "may be affected" by the judgment to be joined is a "substantive" right, unaffected by the federal rules; that a trial court "may not proceed" in the absence of such a person; and that since Dutcher could not be joined as a defendant without destroying diversity jurisdiction the action had to be dismissed.

Since this ruling presented a serious challenge to the scope of the newly amended Rule 19, we granted certiorari. 386 U. S. 940. Concluding that the inflexible approach adopted by the Court of Appeals in this case exemplifies the kind of reasoning that the Rule was designed to avoid, we reverse.

### I.

The applicable parts of Rule 19 read as follows:

"Rule 19. Joinder of Persons Needed for Just Adjudication

"(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant,

or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

"(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

We may assume, at the outset, that Dutcher falls within the category of persons who, under § (a), should be "joined if feasible." The action was for an adjudication of the validity of certain claims against a fund. Dutcher, faced with the possibility of judgments against him, had an interest in having the fund preserved to cover that potential liability. Hence there existed, when this case went to trial, at least the possibility that a judgment might impede Dutcher's ability to protect his interest, or lead to later relitigation by him.

The optimum solution, an adjudication of the permission question that would be binding on all interested persons, was not "feasible," however, for Dutcher could not be made a defendant without destroying diversity. Hence the problem was the one to which Rule 19 (b)

appears to address itself: in the absence of a person who "should be joined if feasible," should the court dismiss the action or proceed without him? Since this problem emerged for the first time in the Court of Appeals, there were also two subsidiary questions. First, what was the effect, if any, of the failure of the defendants to raise the matter in the District Court? Second, what was the importance, if any, of the fact that a judgment, binding on the parties although not binding on Dutcher, had already been reached after extensive litigation? The three questions prove, on examination, to be interwoven.

We conclude, upon consideration of the record and applying the "equity and good conscience" test of Rule 19 (b), that the Court of Appeals erred in not allowing the judgment to stand.

Rule 19 (b) suggests four "interests" that must be examined in each case to determine whether, in equity and good conscience, the court should proceed without a party whose absence from the litigation is compelled.[2] Each of these interests must, in this case, be viewed entirely from an appellate perspective since the matter of joinder was not considered in the trial court. First, the plaintiff has an interest in having a forum. Before the trial, the strength of this interest obviously depends upon whether a satisfactory alternative forum exists.[3]

---

[2] For convenience, we treat these interests in a different order from that appearing in Rule 19 (b). Our list follows that of Reed, Compulsory Joinder of Parties in Civil Actions, 55 Mich. L. Rev. 327, 330 (1957).

[3] The Advisory Committee on the Federal Rules of Civil Procedure, in its Note on the 1966 Revision of Rule 19, quoted at 3 Moore, Federal Practice ¶ 19.01 (hereinafter cited as "Committee Note"), comments as follows on the fourth factor listed in Rule 19 (b), the adequacy of plaintiff's remedy if the action is dismissed: "[T]he court should consider whether there is any assurance that the plaintiff, if dismissed, could sue effectively in another forum where better joinder would be possible." See *Fitzgerald* v. *Haynes,*

On appeal, if the plaintiff has won, he has a strong additional interest in preserving his judgment. Second, the defendant may properly wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another. After trial, however, if the defendant has failed to assert this interest, it is quite proper to consider it foreclosed.[4]

Third, there is the interest of the outsider whom it would have been desirable to join. Of course, since the outsider is not before the court, he cannot be bound by the judgment rendered. This means, however, only that a judgment is not *res judicata* as to, or legally enforceable against, a nonparty.[5] It obviously does not mean either (a) that a court may never issue a judgment that, in practice, affects a nonparty or (b) that (to the contrary) a court may always proceed without considering the potential effect on nonparties simply because they are not "bound" in the technical sense.[6] Instead, as Rule 19 (a) expresses it, the court must consider the extent to which the judgment may "as a practical matter impair or impede his ability to protect" his interest in the subject matter. When a case has reached the appeal stage the matter is more complex. The judgment ap-

---

241 F. 2d 417, 420 (C. A. 3d Cir.); *Fouke* v. *Schenewerk*, 197 F. 2d 234, 236.

[4] The Committee Note comments that "when the moving party is seeking dismissal in order to protect himself against a later suit by the absent person . . . and is not seeking vicariously to protect the absent person against a prejudicial judgment . . . his undue delay in making the motion can properly be counted against him as a reason for denying the motion." Of course, where an objection to nonjoinder has been erroneously overruled in the district court, the court of appeals may correct the error to prevent harassment of defendants. *Young* v. *Powell*, 179 F. 2d 147.

[5] See the discussion by Reed, *supra*, n. 2, at 330–335. See also Hazard, Indispensable Party: The Historical Origin of a Procedural Phantom, 61 Col. L. Rev. 1254 (1961).

[6] See *Keegan* v. *Humble Oil & Refining Co.*, 155 F. 2d 971.

pealed from may not in fact affect the interest of any outsider even though there existed, before trial, a possibility that a judgment affecting his interest would be rendered.[7] When necessary, however, a court of appeals should, on its own initiative, take steps to protect the absent party, who of course had no opportunity to plead and prove his interest below.[8]

Fourth, there remains the interest of the courts and the public in complete, consistent, and efficient settlement of controversies. We read the Rule's third criterion, whether the judgment issued in the absence of the nonjoined person will be "adequate," to refer to this public stake in settling disputes by wholes, whenever possible, for clearly the plaintiff, who himself chose both the forum and the parties defendant, will not be heard to complain about the sufficiency of the relief obtainable against them. After trial, considerations of efficiency of course include the fact that the time and expense of a trial have already been spent.

Rule 19 (b) also directs a district court to consider the possibility of shaping relief to accommodate these four interests. Commentators had argued that greater attention should be paid to this potential solution to a joinder stymie,[9] and the Rule now makes it explicit that

---

[7] See *Bourdieu* v. *Pacific Oil Co.*, 299 U. S. 65, where this Court held that an inquiry into indispensability would be unnecessary where the complaint did not state a cause of action. But see *Calcote* v. *Texas Pac. Coal & Oil Co.*, 157 F. 2d 216, criticized, 2 Barron & Holtzoff, Federal Practice & Procedure § 516 (1967 Supp.) (Wright ed.).

[8] *E. g.*, *Hoe* v. *Wilson*, 9 Wall. 501. See generally 2 Barron & Holtzoff, Federal Practice & Procedure § 516 (1967 Supp.) (Wright ed.).

[9] *E. g.*, Reed, *supra*, n. 2. See Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv. L. Rev. 356 (1967). Compare *Roos* v. *Texas Co.*, 23 F. 2d 171.

a court should consider modification of a judgment as an alternative to dismissal.[10] Needless to say, a court of appeals may also properly require suitable modification as a condition of affirmance.

Had the Court of Appeals applied Rule 19's criteria to the facts of the present case, it could hardly have reached the conclusion it did. We begin with the plaintiffs' viewpoint. It is difficult to decide at this stage whether they would have had an "adequate" remedy had the action been dismissed before trial for nonjoinder: we cannot here determine whether the plaintiffs could have brought the same action, against the same parties plus Dutcher, in a state court. After trial, however, the "adequacy" of this hypothetical alternative, from the plaintiffs' point of view, was obviously greatly diminished. Their interest in preserving a fully litigated judgment should be overborne only by rather greater opposing considerations than would be required at an earlier stage when the plaintiffs' only concern was for a federal rather than a state forum.

Opposing considerations in this case are hard to find. The defendants had no stake, either asserted or real, in the joinder of Dutcher. They showed no interest in joinder until the Court of Appeals took the matter into its own hands. This properly forecloses any interest of theirs, but for purposes of clarity we note that the insurance company, whose liability was limited to $100,000, had or will have full opportunity to litigate each claim on that fund against the claimant involved. Its only concern with the absence of Dutcher was and is to obtain a windfall escape from its defeat at trial.

---

[10] As the Committee Note points out, this principle meshes with others to be considered. An appropriate statement of the question might be "Can the decree be written so as to protect the legitimate interests of outsiders and, if so, would such a decree be adequate to the plaintiff's needs and an efficient use of judicial machinery?"

The interest of the outsider, Dutcher, is more difficult to reckon. The Court of Appeals, concluding that it should not follow Rule 19's command to determine whether, as a practical matter, the judgment impaired the nonparty's ability to protect his rights, simply quoted the District Court's reasoning on the Dead Man issue as proof that Dutcher had a "right" to be joined:

> " 'The subject matter of this suit is the coverage of Lumbermens' policy issued to Dutcher. Depending upon the outcome of this trial, Dutcher may have the policy all to himself or he may have to share its coverage with the Cionci Estate, thereby extending the availability of the proceeds of the policy to satisfy verdicts and judgments in favor of the two Estate plaintiffs. Sharing the coverage of a policy of insurance with finite limits with another, and thereby making that policy available to claimants against that other person is immediately worth less than having the coverage of such policy available to Dutcher alone. By the outcome in the instant case, to the extent that the two Estate plaintiffs will have the proceeds of the policy available to them in their claims against Cionci's estate, Dutcher will lose a measure of protection. Conversely, to the extent that the proceeds of this policy are not available to the two Estate plaintiffs Dutcher will gain. . . . It is sufficient for the purpose of determining adversity [of interest] that it appears clearly that the measure of Dutcher's protection under this policy of insurance is dependent upon the outcome of this suit. That being so, Dutcher's interest in these proceedings is adverse to the interest of the two Estate plaintiffs, the parties who represent, on this record, the interests of the deceased persons in the matter in controversy.' " [11]

---

[11] 218 F. Supp. 802, 805–806, quoted at 365 F. 2d, at 805.

There is a logical error in the Court of Appeals' appropriation of this reasoning for its own quite different purposes: Dutcher had an "adverse" interest (sufficient to invoke the Dead Man Rule) because he would have been *benefited* by a ruling *in favor of* the insurance company; the question before the Court of Appeals, however, was whether Dutcher was *harmed* by the judgment *against* the insurance company.

The two questions are not the same. If the three plaintiffs had lost to the insurance company on the permission issue, that loss would have ended the matter favorably to Dutcher. If, as has happened, the three plaintiffs obtain a judgment against the insurance company on the permission issue, Dutcher may still claim that as a nonparty he is not estopped by that judgment from relitigating the issue. At that point it might be argued that Dutcher should be bound by the previous decision because, although technically a nonparty, he had purposely bypassed an adequate opportunity to intervene. We do not now decide whether such an argument would be correct under the circumstances of this case. If, however, Dutcher is properly foreclosed by his failure to intervene in the present litigation, then the joinder issue considered in the Court of Appeals vanishes, for any rights of Dutcher's have been lost by his own inaction.

If Dutcher is not foreclosed by his failure to intervene below, then he is not "bound" by the judgment against the insurance company and, in theory, he has not been harmed. There remains, however, the practical question whether Dutcher is likely to have any need, and if so will have any opportunity, to relitigate. The only possible threat to him is that if the fund is used to pay judgments against Cionci the money may in fact have disappeared before Dutcher has an opportunity to

assert his interest. Upon examination, we find this supposed threat neither large nor unavoidable.

The state-court actions against Dutcher had lain dormant for years at the pleading stage by the time the Court of Appeals acted. Petitioner asserts here that under the applicable Pennsylvania vicarious liability law there is virtually no chance of recovery against Dutcher. We do not accept this assertion as fact, but the matter could have been explored below. Furthermore, even in the event of tort judgments against Dutcher, it is unlikely that he will be prejudiced by the outcome here. The potential claimants against Dutcher himself are identical with the potential claimants against Cionci's estate. Should the claimants seek to collect from Dutcher personally, he may be able to raise the permission issue defensively, making it irrelevant that the actual monies paid from the fund may have disappeared: Dutcher can assert that Cionci did not have his permission and that therefore the payments made on Cionci's behalf out of Dutcher's insurance policy should properly be credited against Dutcher's own liability. Of course, when Dutcher raises this defense he may lose, either on the merits of the permission issue or on the ground that the issue is foreclosed by Dutcher's failure to intervene in the present case, but Dutcher will not have been prejudiced by the failure of the District Court here to order him joined.

If the Court of Appeals was unconvinced that the threat to Dutcher was trivial, it could nevertheless have avoided all difficulties by proper phrasing of the decree. The District Court, for unspecified reasons, had refused to order immediate payment on the Cionci judgment. Payment could have been withheld pending the suits against Dutcher and relitigation (if that became necessary) by him. In this Court, furthermore, counsel for

petitioner represented orally that the tort plaintiffs would accept a limitation of all claims to the amount of the insurance policy. Obviously such a compromise could have been reached below had the Court of Appeals been willing to abandon its rigid approach and seek ways to preserve what was, as to the parties, subject to the appellant's other contentions, a perfectly valid judgment.

The suggestion of potential relitigation of the question of "permission" raises the fourth "interest" at stake in joinder cases—efficiency. It might have been preferable, at the trial level, if there were a forum available in which both the company and Dutcher could have been made defendants, to dismiss the action and force the plaintiffs to go elsewhere. Even this preference would have been highly problematical, however, for the actual threat of relitigation by Dutcher depended on there being judgments against him and on the amount of the fund, which was not revealed to the District Court. By the time the case reached the Court of Appeals, however, the problematical preference on efficiency grounds had entirely disappeared: there was no reason then to throw away a valid judgment just because it did not theoretically settle the whole controversy.

## II.

Application of Rule 19 (b)'s "equity and good conscience" test for determining whether to proceed or dismiss would doubtless have led to a contrary result below. The Court of Appeals' reasons for disregarding the Rule remain to be examined.[12] The majority of the

---

[12] Rule 19 was completely rewritten subsequent to the proceedings in the District Court in this case. There is, however, no occasion for separate consideration of the question whether the action of the Court of Appeals would have been proper under the old version of the Rule. The new version was adopted on July 1, 1966, while the appeal, in which the joinder question first arose, was pending. The majority in the Court of Appeals did not purport to rely on the

court concluded that the Rule was inapplicable because "substantive" rights are involved, and substantive rights are not affected by the Federal Rules. Although the

older version, but on its conclusion that the Rule, in either form, had no application to this case. The dissent below found the Rule applicable, and concluded that the District Court should not be reversed on the basis of either version.

The new text of the Rule was not intended as a change in principles. Rather, the Committee found that the old text "was defective in its phrasing and did not point clearly to the proper basis of decision." This Court, having the ultimate rule-making authority subject to congressional veto, approved the Committee's suggestions. Where the new version emphasizes the pragmatic consideration of the effects of the alternatives of proceeding or dismissing, the older version tended to emphasize classification of parties as "necessary" or "indispensable." Although the two approaches should come to the same point, since the only reason for asking whether a person is "necessary" or "indispensable" is in order to decide whether to proceed or dismiss in his absence and since that decision must be made on the basis of practical considerations, *Shaughnessy* v. *Pedreiro,* 349 U. S. 48, and not by "prescribed formula," *Niles-Bement Co.* v. *Iron Moulders Union,* 254 U. S. 77, the Committee concluded, without directly criticizing the outcome of any particular case, that there had at times been "undue preoccupation with abstract classifications of rights or obligations, as against consideration of the particular consequences of proceeding with the action and the ways by which these consequences might be ameliorated by the shaping of final relief or other precautions." An excellent example of the cases causing apprehension is *Parker Rust-Proof Co.* v. *Western Union Tel. Co.,* 105 F. 2d 976. Judge Swan, writing for a panel that included Judges L. Hand and A. N. Hand, stated that a nonjoined person was an "indispensable" party to a suit to compel issuance of a patent, but went on to say that "as the object of the rule respecting indispensable parties is to accomplish justice between all the parties in interest, courts of equity will not suffer it to be so applied as to defeat the very purposes of justice." *Id.,* at 980. On this basis, the Court of Appeals reversed the District Court's dismissal of the action for nonjoinder. Under the present version of the Rule, the same result would be reached for, ultimately, the same reasons. The present version simply avoids the purely verbal anomaly, an indispensable person who turns out to be dispensable after all.

court did not articulate exactly what the substantive rights are, or what law determines them, we take it to have been making the following argument: (1) there is a category of persons called "indispensable parties"; (2) that category is defined by substantive law and the definition cannot be modified by rule; (3) the right of a person falling within that category to participate in the lawsuit in question is also a substantive matter, and is absolute.[13]

With this we may contrast the position that is reflected in Rule 19. Whether a person is "indispensable," that is, whether a particular lawsuit must be dismissed in the absence of that person, can only be determined in the context of particular litigation.[14] There is a large category, whose limits are not presently in question, of persons who, in the Rule's terminology, should be "joined if feasible," and who, in the older terminology, were called either necessary or indispensable parties. Assuming the existence of a person who should be joined if feasible, the only further question arises when joinder is not possible and the court must decide whether to dismiss or to proceed without him. To use the familiar but confusing terminology, the decision to proceed is a decision that the absent person is merely "necessary" while the decision to dismiss is a decision that he is "indispensable."[15] The

---

[13] One commentator has stated that "[i]f this [the Court of Appeals' position in the present case] is sound, amended Rule 19 would be invalid. But there is no case support for the proposition that the judge-made doctrines of compulsory joinder have created substantive rights beyond the reach of the rulemaking power." 2 Barron & Holtzoff, Federal Practice & Procedure § 512, n. 21.14 (1967 Supp.) (Wright ed.).

[14] As the Court has before remarked, "[t]here is no prescribed formula for determining in every case whether a person . . . is an indispensable party . . . ." *Niles-Bement Co.* v. *Iron Moulders Union,* 254 U. S. 77, at 80.

[15] The Committee Note puts the matter as follows: "The subdivision [19 (b)] uses the word 'indispensable' only in a conclusory

decision whether to dismiss (*i. e.,* the decision whether the person missing is "indispensable") must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests. Rule 19 does not prevent the assertion of compelling substantive interests; it merely commands the courts to examine each controversy to make certain that the interests really exist. To say that a court "must" dismiss in the absence of an indispensable party and that it "cannot proceed" without him puts the matter the wrong way around: a court does not know whether a particular person is "indispensable" until it has examined the situation to determine whether it can proceed without him.

The Court of Appeals concluded, although it was the first court to hold, that the 19th century joinder cases in this Court created a federal, common-law, substantive right in a certain class of persons to be joined in the corresponding lawsuits.[16] At the least, that was not the

sense, that is, a person is 'regarded as indispensable' when he cannot be made a party and, upon consideration of the factors above mentioned, it is determined that in his absence it would be preferable to dismiss the action, rather than to retain it."

[16] Numerous cases in the lower federal courts have dealt with compulsory joinder, and the Court of Appeals concluded that principles enunciated in those cases required dismissal here. However, none of the cases cited here or below presented a factual situation resembling this case: the error made by the Court of Appeals was precisely its reliance on formulas extracted from their contexts rather than on pragmatic analysis. Moreover, although the Court of Appeals concluded that the "distilled essence" of earlier cases is that the question whether to dismiss is "substantive" and that "Rule 19 does not apply to the indispensable party doctrine," it found no cases actually so holding.

One of the reasons listed by the Committee Note for the change in the wording of Rule 19 was "Failure to point to correct basis of decision." The imprecise and confusing language of the original wording of the Rule produced a variety of responses in the

way the matter started. The joinder problem first arose in equity and in the earliest case giving rise to extended discussion the problem was the relatively simple one of the inefficiency of litigation involving only some of the interested persons. A defendant being sued by several cotenants objected that the other cotenants were not made parties. Chief Justice Marshall replied:

> "This objection does not affect the jurisdiction, but addresses itself to the policy of the Court. Courts of equity require, that all the parties concerned in interest shall be brought before them, that the matter in controversy may be finally settled. This equitable rule, however, is framed by the Court itself, and is subject to its discretion. . . . [B]eing introduced by the Court itself, for the purposes of justice, [the rule] is susceptible of modification

---

lower courts. In some cases a formulaic approach was employed, making it difficult now to determine whether the result reached was proper or not. Other cases demonstrate close attention to the significant pragmatic considerations involved in the particular circumstances, leading to a resolution consistent with practical and creative justice. For examples in the latter category, see *Roos* v. *Texas Co.*, 23 F. 2d 171 (C. A. 2d Cir.) (L. Hand, J.) (decided prior to adoption of Fed. Rules Civ. Proc.); *Kroese* v. *General Steel Castings Corp.*, 179 F. 2d 760 (C. A. 3d Cir.) (Goodrich, J.); *Stevens* v. *Loomis*, 334 F. 2d 775 (C. A. 1st Cir.) (Aldrich, J.). It is interesting that the only judicial recognition found by the Court of Appeals of its view that indispensability is a "substantive" matter is a footnote in the last-cited case attributing to the (then) proposed new formulation of Rule 19 "the view that what are indispensable parties is a matter of substance, not of procedure." *Id.*, at 778, n. 7. Taken in context, Judge Aldrich's statement refers simply to the view that a decision whether to dismiss must be made pragmatically, in the context of the "substance" of each case, rather than by procedural formula. The statement is hardly support for the proposition that a court of appeals may ignore Rule 19's command to undertake a practical examination of circumstances.

for the promotion of those purposes. . . . In the exercise of its discretion, the Court will require the plaintiff to do all in his power to bring every person concerned in interest before the Court. But, if the case may be completely decided as between the litigant parties, the circumstance that an interest exists in some other person, whom the process of the Court cannot reach . . . ought not to prevent a decree upon its merits." [17]

Following this case there arose three cases, also in equity, that the Court of Appeals here held to have declared a "substantive" right to be joined. It is true that these cases involved what would now be called "substantive" rights. This substantive involvement of the absent person with the controversy before the Court was, however, in each case simply an inescapable fact of the situation presented to the Court for adjudication. The Court in each case left the outsider with no more "rights" than it had already found belonged to him. The question in each case was simply whether, given the substantive involvement of the outsider, it was proper to proceed to adjudicate as between the parties.

The first of the cases was *Mallow* v. *Hinde*, 12 Wheat. 193, in which, in essence, the plaintiff sought specific performance of a contract to convey land, but sought it not against his vendor (who could not be joined) but against a person who claimed through an entirely different chain of title. The Court saw that any declaration of rights between the parties before it would either purport (incorrectly) to determine the validity of plaintiff's contract with his grantor, or would decide nothing. The Court said, in language quoted here by the Court of Appeals:

"In this case, the complainants have no rights separable from, and independent of, the rights of

---

[17] *Elmendorf* v. *Taylor*, 10 Wheat. 152, at 166–168.

persons not made parties. The rights of those not before the Court lie at the very foundation of the claim of right by the plaintiffs, and a final decision cannot be made between the parties litigant without directly affecting and prejudicing the rights of others not made parties. . . .

"We do not put this case upon the ground of jurisdiction, but upon a much broader ground . . . . We put it on the ground that no Court can adjudicate directly upon a person's right, without the party being either actually or constructively before the Court." [18]

Nothing in this language is inconsistent with the Rule 19 formulation, or otherwise suggests that lower courts are expected to proceed without examining the actual interest of the nonjoined person. As the Court explicitly stated, there is no question of "jurisdiction" and there can be no binding adjudication of a person's rights in the absence of that person. Rather, the problem under the circumstances was that the substantive involvement of the grantor was such that in his absence there was nothing for the Court to decide.

The second case relied upon by the Court of Appeals, *Northern Indiana R. Co.* v. *Michigan Central R. Co.,* 15 How. 233, presents a different aspect of joinder. There suit was brought for an injunction against construction

---

[18] 12 Wheat., at 198, quoted at 365 F. 2d, at 806. The facts were that T, a trustee of land for the benefit of certain persons, may or may not have conveyed legal title to defendant Hinde. Plaintiff Mallow claimed equitable title by virtue of an executory agreement between the trust beneficiaries and one Langham, who conveyed to plaintiff. Mallow sued Hinde to compel conveyance of the legal title, but T and the beneficiaries could not be joined. Hinde contended that the beneficiaries had no power to sell to Langham, and that the purported contract had, in any event, been obtained by fraud.

by defendant of a railroad that it was under contract to a nonjoined outsider to build. Thus the plaintiff was seeking equitable relief that would, in practice, abrogate the contractual rights of a nonparty. Among the unpleasant possibilities entailed by proceeding was the likelihood that the defendant might find itself subject to directly conflicting injunctive orders. The Court ruled that,

> ". . . in a case like the present, where a court cannot but see that the interest of the New Albany Company must be vitally affected, if the relief prayed by the complainants be given, the court must refuse to exercise jurisdiction in the case, or become the instrument of injustice." [19]

Again, the Court of Appeals' reliance on this language to show that in *any* case where an outsider "may be affected" it is necessarily unjust to proceed, is altogether misplaced: the Court in *Northern Indiana R. Co.* simply found that there would be injustice in proceeding given the particular factual and legal situation before it. Neither Rule 19, nor we, today, mean to foreclose an examination in future cases to see whether an injustice is being, or might be, done to the substantive, or, for that matter, constitutional, rights of an outsider by proceeding with a particular case. In this instance, however, no such examination was made below, and no such injustice appears on the record here.

The most influential of the cases in which this Court considered the question whether to proceed or dismiss in the absence of an interested but not joinable outsider is *Shields* v. *Barrow,* 17 How. 130, referred to in the opinion below. There the Court attempted, perhaps unfortunately, to state general definitions of those per-

---

[19] 15 How., at 246, quoted at 365 F. 2d, at 806.

sons without whom litigation could or could not proceed. In the former category were placed

"Persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. These persons are commonly termed necessary parties; but if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties." [20]

The persons in the latter category were

"Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." [21]

These generalizations are still valid today, and they are consistent with the requirements of Rule 19, but they are not a substitute for the analysis required by that Rule. Indeed, the second *Shields* definition states, in rather different fashion, the criteria for decision announced in Rule 19 (b). One basis for dismissal is

---

[20] 17 How., at 139.

[21] *Ibid.* Plaintiff was suing for rescission of a contract but was unable to join some of the parties to it. Reed, *supra,* n. 2, comments that much later difficulty could have been avoided had this Court pointed the way in *Shields* by undertaking a practical examination of the facts. *Id.,* at 340–346. He concludes that "The facts in the opinion are insufficient to demonstrate that the result is a just one." *Id.,* at 344. See also Kaplan, *supra,* n. 9, at 361.

prejudice to the rights of an absent party that *"cannot"* be avoided in issuance of a final decree. Alternatively, if the decree can be so written that it protects the interests of the absent persons, but as so written it leaves the controversy so situated that the outcome may be inconsistent with "equity and good conscience," the suit should be dismissed.

The majority of the Court of Appeals read *Shields* v. *Barrow* to say that a person whose interests "may be affected" by the decree of the court is an indispensable party, and that all indispensable parties have a "substantive right" to have suits dismissed in their absence. We are unable to read *Shields* as saying either. It dealt only with persons whose interests must, unavoidably, be affected by a decree and it said nothing about substantive rights.[22] Rule 19 (b), which the Court of Appeals dismissed as an ineffective attempt to change the substantive rights stated in *Shields*, is, on the contrary, a valid statement of the criteria for determining whether to proceed or dismiss in the forced absence of an interested person. It takes, for aught that now appears, adequate account of the very real, very substantive claims to fairness on the part of outsiders that may arise in some cases. This, however, simply is not such a case.

### III.

The Court of Appeals stated a second and distinct ground for reversing the District Court and ordering dismissal of the action. It will be recalled that at the

---

[22] Indeed, for example, it has been clear that in a diversity case the question of joinder is one of federal law. *E. g., De Korwin* v. *First Nat. Bank,* 156 F. 2d 858, 860, citing *Shields.* To be sure, state-law questions may arise in determining what interest the outsider actually has, *e. g., Kroese* v. *General Steel Castings Corp.,* 179 F. 2d 760 (C. A. 3d Cir.), but the ultimate question whether, given those state-defined interests, a federal court may proceed without the outsider is a federal matter.

time the present declaratory judgment action came to trial two tort actions were pending in the state courts. In one, the estate of the deceased truck driver, Smith, was suing the estate of Cionci, as tortfeasor, plus Dutcher, on the theory that Cionci was doing an errand for him at the time of the accident, plus Lynch's estate, on the theory that Lynch had been in "control" of Cionci. Harris, the injured passenger, was suing the same three defendants on the same theories in a separate action. The Court of Appeals concluded that since these actions "presented the mooted question as to the coverage of the policy," the issue presented in the present proceeding, the District Court should have declined jurisdiction in order to allow the state courts to settle this question of state law.

We believe the Court of Appeals decided this question incorrectly. While we reaffirm our prior holding that a federal district court should, in the exercise of discretion, decline to exercise diversity jurisdiction over a declaratory judgment action raising issues of state law when those same issues are being presented contemporaneously to state courts, e. g., Brillhart v. Excess Ins. Co., 316 U. S. 491, we do not find that to be the case here.

This issue, like the joinder issue, was not raised at trial. While we do not now declare that a court of appeals may never on its own motion compel dismissal of an action as an unwarranted intrusion upon state adjudication of state law, we do conclude that, this being a discretionary matter, the existence of a verdict reached after a prolonged trial in which the defendants did not invoke the pending state actions should be taken into consideration in deciding whether dismissal is the wiser course.

It can hardly be said that Lynch's administrator, the plaintiff and petitioner in this case, would have had a satisfactory opportunity to litigate the issue of Cionci's

permission in the state actions. The Court of Appeals said that "all the persons involved in the accident were parties" to the state-court actions. If the implication is that the state actions could have resulted in judgments in favor of Lynch's estate and against the insurance company on the issue of Cionci's permission, this implication is not correct. The insurance company was not a party to the tort actions, and was not defending Cionci's estate. Lynch's estate was a party only in the sense that Lynch's personal representative (a different person from Lynch's administrator, the plaintiff in this case) was made a defendant in tort. Furthermore, the Smith and Harris actions against Cionci had nothing to do with the issue of insurance coverage: had Smith or Harris won a judgment against Cionci's estate, they would have had to bring a further action against the insurance company; this further action could well have been brought in a federal court. In short, the net result of dismissal here would presumably have been a diversity action identical with this one, except that Lynch's estate would have been compelled to wait upon the convenience of plaintiffs over whom it had no control, and would have been dependent upon a victory by those plaintiffs in a suit in which it was a defendant.

The issues that were before the state courts in the tort actions were not the same as the issues presented by this case. To be sure, a critical question of fact in both cases was what Dutcher said to Cionci when he gave him the keys. But in the state-court actions the ultimate question was whether Cionci was acting as Dutcher's agent, thus making Dutcher personally liable for Cionci's tort. In this case the question was simply whether Cionci had "permission," thus bringing Cionci's own liability within the coverage of the insurance policy. Resolution of the "agency" issue in the state court would have had no bearing on the "permission" issue even if

that resolution were binding on Lynch's estate. Furthermore, although the state court would have had to rule (and still will have to do so, if the cases are ever tried) whether or not Dutcher may testify against the estates under the Dead Man Rule, this question is also a different one in the state and federal cases. In the state cases, Dutcher was a defendant, and the question would be whether he could testify in defense against his own liability. In the present case the question was rather whether he could testify, as a nonparty, on the coverage of his insurance policy.

We think it clear that the judgment below cannot stand. The judgment is vacated and the case is remanded to the Court of Appeals for consideration of those issues raised on appeal that have not been considered, and, should the Court of Appeals affirm the District Court as to those issues, for appropriate disposition preserving the judgment of the District Court and protecting the interests of nonjoined persons.

*It is so ordered.*