**PUEBLO OF SANDIA, et al., Plaintiffs,**

v.

**Bruce H. BABBITT, in his official capacity as Secretary of the Interior, Defendant.**

**Civil Action No. 98–1004(RCL).**

United States District Court, District of Columbia.

April 28, 1999.

Peter Thomas Grossi, Jr., Arnold & Porter, Washington, DC, for plaintiffs.

Edward J. Passarelli, U.S. Dept. of Justice, Environmental & Natural Resources Division, Washington, DC, for defendant.

*MEMORANDUM OPINION*

LAMBERTH, District Judge.

This case presents an issue of civil procedure that may have wide-ranging consequences for gaming activities operated on Native American lands. Before the Court is a motion by the Secretary of the Interior seeking dismissal of the plaintiffs' action for failure to join the State of New Mexico, which the Secretary argues is an indispensable party under Federal Rule of Civil Procedure 19(b). Upon consideration of the motion, the plaintiffs' opposition, and a thorough review of relevant caselaw, the Court reluctantly agrees with the defendant that the State of New Mexico is an indispensable party without which this action may not proceed. Consequently, the defendant's motion will be granted, and plaintiffs' action will be dismissed.

## I. BACKGROUND

Plaintiffs, the Pueblo of Sandia and the Pueblo of Isleta, are federally recognized

Indian tribes. They, like several other tribes in New Mexico, operate gambling facilities on tribal lands, which are a substantial, if not the predominating, source of funds for their tribal governments and a vital element of the economy on tribal lands. The Pueblos have brought this suit against the Secretary of the Interior seeking review of the Secretary's "no action" approval of gaming compacts entered into by the plaintiffs and the State of New Mexico in 1997.

Plaintiffs' lawsuit, and the current motion to dismiss by the defendant, must be considered in light of the recent history of Indian gaming law, and the experience of New Mexico in particular. In 1987, the United States Supreme Court decided that, as a matter of federal common law, the states generally lacked the authority to regulate Indian gaming on reservations absent a congressional grant of jurisdiction. *See California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987). One year later, Congress enacted the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. § 2701 *et seq.*

The IGRA established a comprehensive scheme for state-tribal relations on the issue of gaming. Under the Act, the so-called Class III gaming at issue here (including casino gambling, dog racing, and most forms of gaming other than bingo and social gambling) may be conducted on Indian lands only pursuant to a "Tribal–State compact entered into by the Indian tribe and the State" and approved by the Secretary of the Interior. 25 U.S.C. § 2710(d)(1)(C); *id.* § 2710(d)(8) (regulating the Secretary's approval or disapproval of a compact). In exchange for the authority to participate in the regulation of Class III gaming on Indian lands, the States are required by the IGRA to "negotiate with the Indian tribe in good faith to enter into such a compact." 25 U.S.C. § 2710(d)(3)(A).

Following the enactment of the IGRA, the plaintiffs and other Native American tribes in New Mexico sought for many years to negotiate a gaming compact with the State. In 1991, the Pueblo of Sandia negotiated a compact with then-Governor King, but the governor ultimately refused to sign the compact. After the election of a more sympathetic governor, the Tribes were able to execute compacts with then-Governor Johnson in 1995. These compacts were promptly approved by the Secretary of the Interior, but the state attorney general subsequently challenged the governor's authority to enter into the compact. The New Mexico Supreme Court held that the state legislature was the appropriate body to enter into compacts with the Indian tribes, and the 1995 compacts were invalidated. *See State ex. rel. Clark v. Johnson,* 120 N.M. 562, 904 P.2d 11 (1995).

As enacted in 1988, the IGRA provided the Tribes with a federal cause of action to compel a State that refused to negotiate a compact in good faith as required by the Act. *See* 25 U.S.C. § 2710(d)(7), *held unconstitutional in Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). In fact, plaintiff Pueblo of Sandia brought suit against the State of New Mexico, along with several other tribes, and won a ruling from the United States Court of Appeals for the Tenth Circuit that the State could not escape litigation based on its sovereign immunity. *See Ponca Tribe of Oklahoma v. Oklahoma,* 37 F.3d 1422 (10th Cir.1994), vacated, 517 U.S. 1129, 116 S.Ct. 1410, 134 L.Ed.2d 537 (1996). The Tenth Circuit's decision, however, was vacated after the Supreme Court held in *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), that Congress lacks the authority under the Indian Commerce Clause to abrogate the states' Eleventh Amendment immunity. *See also Ponca Tribe of Oklahoma v. Oklahoma,* 89 F.3d 690 (10th Cir.1996) (on remand, holding that the tribes could not proceed).

Following these court rulings, the New Mexico Legislature enacted a bill making a

"take it or leave it" offer to the tribes. House Bill 399 (HB399) legislated nonnegotiable terms for compacts with the tribes. Among those terms are two provisions that are particularly questionable: a "revenue sharing" provision requiring the tribes to pay sixteen percent of the net revenues from Indian gaming, and the imposition of "regulatory fees," assessing fees for each slot machine, roulette table, etc., utilized by the tribes. Furthermore, HB399 includes a nonseverability clause ensuring that the compacts could not go into effect without the questionable provisions.

Faced with the choice of shutting down their gaming operations or signing the State-dictated compacts, the plaintiff tribes chose to sign the compacts and did so in July of 1997, with express reservations as to the legality of the revenue sharing and regulatory fee provisions. The tribes asked the State to negotiate the revenue sharing and regulatory fee provisions; the State has never agreed to any such negotiations.

As required by the IGRA, the tribal-state compacts signed by plaintiffs and the State of New Mexico were sent to the Secretary of the Interior for his approval immediately after signing. On August 23, 1997, the Secretary gave notice of his decision by letter to the Tribes and Governor Johnson. The Secretary's decisions reads in part:

I have declined to approve or disapprove the Pueblo['s] Compact within the 45 day period. As a result, the Compact is considered to have been approved, but only to the extent it is consistent with the provisions of IGRA. The Pueblo and the State should be aware that the Department is particularly concerned about two provisions in the Compact that appear inconsistent with IGRA, *i.e.*, the revenue sharing provisions and the regulatory fee structure.

The Secretary's decision then set forth in some detail the Department's concerns regarding the revenue sharing and regulato-ry fee provisions of the compacts. In conclusion, the Secretary stated:

The Department believes that the decision to let the 45-day statutory deadline for approval or disapproval of the Compact expire without taking action is the most appropriate course of action given the unique history of state and federal court cases and legislative actions that have shaped the course of Indian gaming in New Mexico. The Department hopes that the foregoing explanation will encourage the State and the Pueblo to enter into genuine negotiations to resolve these concerns.

Despite the requests of the plaintiffs and the "hope" of the Secretary, the State has declined to negotiate the provisions of the compacts that have been called into question. The Tribes have made all payments required by the compacts, including with each payment an objection to the revenue sharing and regulatory fees aspects of the compacts.

Having received no relief from the State of New Mexico, and unable to sue the State due to the *Seminole Tribe* decision, the plaintiff Pueblos filed this action on April 21, 1998, seeking either (1) a declaration that the Secretary's August 23, 1997 decision placed the compacts into effect without the allegedly illegal provisions or (2) a remand to the Secretary with instructions to strike those provisions of the compacts that the Secretary finds to be unlawful.

In lieu of an answer, the Secretary filed a motion to dismiss the action under Federal Rule of Civil Procedure 19 for failure to join the State of New Mexico, which the Secretary argues is an indispensable party. Because the Court finds the caselaw to compel dismissal, the Court will grant the defendant's motion for the reasons set forth below.

## II. LAW AND APPLICATION

Although couched in terms of a Rule 19 motion to dismiss for nonjoinder, the mo-

tion currently before the Court represents a direct attack on the practical viability of the Indian Gaming Regulatory Act. In the wake of *Seminole Tribe*, the tribes have no power to sue a recalcitrant state directly in federal court to enforce their rights under the IGRA. The plaintiff tribes have therefore turned to the only other possible route to federal enforcement of the IGRA—review of the Secretary's approval or disapproval determination under 25 U.S.C. § 2710(d)(8). If the Court agrees with the Secretary that the State of New Mexico is an indispensable party, then this route to federal review and enforceability will also be effectively cut off, because the State's sovereign immunity precludes joinder (absent a waiver by the State). It is in this context that the Court turns to the Rule 19 analysis.

Federal Rule of Civil Procedure 19 prescribes a three-part procedure for determining whether litigation may proceed in the absence of a particular person or entity. First, the Court must determine if the absent party is "necessary to the litigation;" second, if so, whether the party can be joined; and third, if joinder is infeasible, whether the action can nevertheless proceed "in equity and good conscience." Fed.R.Civ.P. 19; *see Kickapoo Tribe of Indians v. Babbitt*, 43 F.3d 1491, 1494 (D.C.Cir.1995). There is no real dispute that the State of New Mexico is a necessary party under Rule 19(a)(2)(i), because it "claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may [ ] as a practical matter impair or impede the person's ability to protect that interest." Likewise, there is no question that the State cannot be joined unless it agrees to waive its sovereign immunity. The issue before the Court, therefore, is whether, "in equity and good conscience," this action may proceed without the State of New Mexico as a party or whether it must be dismissed, the State being regarded as indispensable. *See* Fed. R.Civ.P. 19(b).

To guide the Court's equitable determination, Rule 19(b) sets forth four nonexclusive factors for the Court's consideration: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

It is a matter of legal consensus that "[t]he rule calls for a pragmatic decision based on practical considerations in the context of particular litigation." *Kickapoo Tribe*, 43 F.3d at 1495 (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 116–18, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), and 7 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1601, at 10, 14 (1986)). However, Rule 19 has been interpreted many times by the courts, and controlling precedent in this jurisdiction significantly cabins a district court's discretion under certain circumstances. In this case, the Court feels compelled by the caselaw to find that the State of New Mexico is an indispensable party without which this case may not proceed.

As an initial matter, the Court of Appeals has held that a district court is "confronted with a more circumscribed inquiry" than usual when a necessary party has sovereign immunity, as " 'there is very little room for balancing of other factors' set out in Rule 19(b) where a necessary party under Rule 19(a) is immune from suit, because immunity may be viewed as one of those interests 'compelling by themselves.' " *Kickapoo Tribe*, 43 F.3d at 1496 (citations omitted). The Secretary seems to argue that, in fact, there is no need to balance other factors, and that the sovereign immunity of a necessary state-party is

itself a bar to litigation. Such a per se rule, however, would be inconsistent with the clear purpose of the current Rule 19, which was to abolish the prior system of labeling certain types of parties "indispensable" in favor of a pragmatic case-by-case analysis. *See Park v. Didden,* 695 F.2d 626, 626 (D.C.Cir.1982); *see also Provident Tradesmens,* 390 U.S. at 118–19, 88 S.Ct. 733. Therefore, keeping in mind that its inquiry is "circumscribed" but nevertheless required by the Rules of Civil Procedure, the Court will address each of the four factors set out in Rule 19(b).

## A. *Prejudice*

The first Rule 19(b) factor to be considered is the extent to which a judgment rendered without the State of New Mexico might be prejudicial to the interests of the State or of the parties. Having found the State to be a necessary party under Rule 19(a), the Court has determined that the State might suffer prejudice to its interests were a judgment entered without the State. The question under Rule 19(b), however, is the *extent* of that prejudice.

First, the Secretary claims that this action cannot proceed without the State because the plaintiffs challenge the validity of a contract to which the State is a party. It is quite true that the parties to a contract generally have been considered indispensable parties to a lawsuit challenging the validity of the contract. *See, e.g., Roos v. Texas Co.,* 23 F.2d 171, 172 (2d Cir.1927) (Learned Hand, J.). Contrary to defendant's suggestion, however, this case is not an ordinary contracts case. The plaintiffs' action does not lie in contract; rather, the plaintiff Pueblos are suing for review of agency action under the Administrative Procedure Act. The nature of this action is clear both from the alleged grievances and the requested relief.

As the Secretary recognizes in his legal memoranda, any inquiry into the validity of a tribal-state gaming compact is a two-part inquiry.[1] The first step in creating an effective compact is the contractual formation of the compact by the tribe and the state. This step is carried out and may be reviewed entirely within the sphere of state contract law. A second step is required before a tribal-state compact can become effective, however—the compact must be approved by the Secretary of the Interior and notice of such approval published in the Federal Register. *See* 25 U.S.C. § 2710(d)(8). This second step raises no issue of offer, acceptance, ratification, or other aspect of contract law. On the contrary, Secretarial approval is agency action like any other, reviewable under the APA, and presenting only issues of federal administrative law. Consequently, the fact that a compact is involved does not (alone) mandate a finding that the State will be so prejudiced as to require dismissal.

It is nevertheless true that any ruling by this Court declaring the revenue sharing or regulatory fees provisions of the compacts to have been stricken by the Secretary would likely prejudice the State's ability to collect those revenues and fees. Although the Court has no idea how much revenue the tribes make from gaming (nor consequently, how much sixteen percent of that would be), nor how many gaming facilities and slot machines and roulette tables, etc. might be subject to the "regulatory fees," the Court can safely presume that the amount is substantial. Nevertheless, the prejudice to an absent party must be more than merely financial to weigh in favor of dismissal under Rule 19(b). *See Makah Indian Tribe v. Verity,* 910 F.2d 555, 558 (9th Cir.1990).

In addition to the financial loss that the State would stand to lose as a collateral consequence of an unfavorable decision by this Court, the State has a legitimate interest in the regulation of gaming within

---

1. This analysis was laid out persuasively by the United States Court of Appeals for the Tenth Circuit in *Pueblo of Santa Ana v. Kelly,* 104 F.3d 1546 (10th Cir.1997).

its territorial limits, including the Indian reservations, and in the state resources that must be spent in conjunction with the permissible regulation of Indian gaming pursuant to the compacts. These interests are legitimate and, in general, favor a finding of indispensability. Furthermore, the protection of these interests is at the heart of the doctrine of sovereign immunity, and a finding that the State is not indispensable to this action would in practical terms constitute an intrusion on the State's rights under the Tenth and Eleventh Amendments.

However, viewed in terms of the "practical considerations in the context of [this] particular litigation," the Court would simply note that the State's alleged interest is much lesser than one might initially presume. The plaintiff Pueblos have requested a declaration from this Court that the Secretary's August 23, 1997 decision approved the compacts only insofar as they were consistent with the IGRA, i.e., with the revenue sharing and regulatory fee provisions stricken or modified. The prejudice to the State from such a determination would be simply that the State would be required to comply with the law. It should go without saying that the State's interest in the continuing effectiveness of compact provisions that violate federal law must be small, if not altogether insignificant.[2]

Having set forth these considerations, the Court finds that the extent to which a judgment rendered without the State's participation might prejudice the State's interests is substantial.[3] In the context of the "cabined inquiry" appropriate in cases involving sovereign immunity, the extent of potential prejudice weighs heavily in favor of dismissal.

### B. *Shaping of Relief to Protect the Absent Party*

The second factor listed in Rule 19(b) is the extent to which any potential prejudice might be lessened or avoided through protective provisions in the judgment or the shaping of relief. As mentioned above, the relief requested by the plaintiffs is relatively narrow—they seek a declaration of whether the Secretary's "no action" approval rendered ineffective two provisions of an otherwise-unchallenged agreement. Declaratory relief is probably the least intrusive type of relief available to a plaintiff in federal court, and it provides the Court with a large degree of flexibility in fashioning a remedy that vindicates the legitimate interests of a prevailing party while protecting to the greatest extent possible the interests of absent parties that might be affected.

Of course, the interests of the State and the interests of the Pueblos do not coincide in this case, or the case would likely not exist.[4] Insofar as that is true, a favorable judgment for the Pueblos may rest on an interpretation of the Secretary's decision with which the State would take issue and

---

**2.** Incidentally, this potential prejudice is quite different than that present in *Kickapoo Tribe,* where the plaintiff tribe was requesting the Court to validate a compact that had been found to violate state law.

**3.** In a purely practical sense, the Court might look with disfavor on the defendant's prejudice arguments for an additional reason: if the State were so worried about protecting its interests, it certainly could waive its immunity and intervene in this action (which, as the complaint currently reads, would subject the State to no risk of damages or broad-ranging judicial rulings). Here again, however, the Court's inquiry is largely constrained by appellate decisions; the Court of Appeals has held unequivocally that "[f]ailure to intervene is not a component of the prejudice analysis where intervention would require the absent party to waive sovereign immunity." *Kickapoo Tribe,* 43 F.3d at 1498 (citing *Wichita & Affiliated Tribes of Oklahoma v. Hodel,* 788 F.2d 765, 776 (D.C.Cir.1986)). Consequently, the Court does not weigh the State's failure to intervene in its Rule 19(b) balancing determination.

**4.** Although, the Court can certainly see a state interest in knowing the effect of the Secretary's decision—an interest in certainty and security, as well as a presumed interest in complying with federal law.

which, in practical terms, might preclude the State from collecting revenue under the two provisions. To that extent, the Court likely could not avoid entirely the risk of prejudice to the State while adequately vindicating the rights of the plaintiff tribes.[5]

### C. *Adequacy of Judgment*

The third Rule 19(b) factor to be considered is whether a judgment rendered in the absence of the State will be "adequate." Initially, it seems logical that a judgment will be "adequate" if it provides all the relief requested by the plaintiffs, as the Court could order here. All that is sought by the plaintiffs is a declaration of the effect of a federal agency decision, and it is hard to see how the presence or absence of a state-party could affect the adequacy of the judgment in this sense.

Defendant, however, argues that a judgment rendered without the State of New Mexico cannot be adequate because there is a likelihood that the State will bring another action against the Secretary or the Tribe, raising the specter of inconsistent decisions and obligations. While there certainly does exist a possibility that the State might bring another lawsuit challenging the Secretary's decision, the Court does not find this possibility to be dispositive by any means. While finality is always desirable, it is not entirely clear that the possibility of further or inconsistent litigation is encompassed within the adequacy inquiry of Rule 19(b). *See* Fed. R.Civ.P. 19 Advisory Committee Notes, The Amended Rule ("The third factor— whether an 'adequate' judgment can be rendered in the absence of a given person—calls attention to the extent of the relief that can be accorded between the parties joined. It meshes with the other factors, especially the 'shaping of relief' mentioned under the second factor."); *see also Wichita & Affiliated Tribes*, 788 F.2d at 777. The full "extent" of relief request-

ed by plaintiffs can be rendered in this case without the State. The fact that the State could also sue for a declaration of the effect of the Secretary's August 23, 1997 should not be a barrier to the tribes' ability to seek review of it or a declaration as to its effect. Consequently, the threat of further litigation weighs in favor of dismissal, but it does not hold great weight.

The defendant also argues that any judgment rendered in the State's absence would be inadequate because it would not be binding on the "real parties in interest." First, this statement is not entirely accurate. The real parties in interest in this action are the Secretary, the two plaintiff Pueblos, and the State; three of these are parties, and a fourth is not. Nevertheless, it would be preferable to have all affected parties joined, so that a judgment would have absolute finality.

On balance, the Court finds that the "adequacy" of a potential judgment rendered in the State's absence would not be so hollow as to itself warrant dismissal.

### D. *Adequate Alternative Remedy*

The fourth factor mandated by Rule 19(b) weighs most heavily against dismissal. As discussed in the background section of this memorandum, today's decision on whether the State of New Mexico is an indispensable party is in practical effect a judgment on the ability of Native Americans to enforce the IGRA in federal court. No adequate alternative forum exists in which plaintiffs may vindicate their rights under the IGRA.

Nevertheless, while the Court of Appeals has recognized the unavailability of an alternative forum as weighing heavily against dismissal of a lawsuit, it has held in a context virtually indistinguishable from this one that "the state's immunity counters against proceeding; even if the Tribe lacked an adequate remedy by which to vindicate its statutory rights, absence of an

---

5. As to any state interests in compact provisions that are found to violate federal law, of

course, the Court sees little value in protecting them.

alternative remedy alone does not dictate retention of jurisdiction under Rule 19." *Kickapoo Tribe,* 43 F.3d at 1499. The Court of Appeals' statement that absence of an alternative remedy *alone* does not preclude dismissal, of course, cannot be dispositive in this case where the absence of an adequate alternative remedy must be weighed in conjunction with a number of other factors that seem to weigh against dismissal. However, the Court of Appeals' *Kickapoo Tribe* decision read as a whole, with its emphasis on sovereign immunity and its easy dismissal of the Kickapoo Tribe's claim that no adequate alternative remedy existed, convinces the Court that only an overpoweringly strong case on the remaining Rule 19(b) factors could permit a finding that the action may proceed without joinder of the State. Although this action presents a reasonably strong case on the other factors, after much deliberation the Court feels compelled to grant defendant's motion to dismiss the action.

The Court's only consolation in this regard is that, as the Secretary argues, plaintiffs may be able to pursue resolution of their claims through arbitration as provided in the compacts. The Court has serious misgivings about the adequacy of arbitration as an alternative means of enforcing federal statutory rights, and the Court does not intend to suggest that contractually provided arbitration should constitute an adequate alternative remedy in Rule 19(b) analysis.[6] In this case, it simply may be better than nothing, which is what today's decision leaves the Tribes with otherwise.

The defendant's other proposed alternative remedy also deserves comment. Defendant argues that the tribes may merely refuse to make the payments required under the compact and then litigate the legality of the suspect provisions when the Justice Department brings criminal proceedings against the tribes for illegal gaming. It should be self-evident that forcing a party to submit to risk of federal criminal prosecution cannot be an "adequate alternative remedy" within the meaning of Rule 19(b).

## III. CONCLUSION

Although the Court feels bound to dismiss this action, it does so reluctantly. The Court is well aware that the consequence of today's decision is that the Pueblos of Sandia and Isleta will have no access to the federal courts by which to vindicate their rights, despite the clear intention of Congress and the fact that, prior to the enactment of the IGRA, the federal common law protected the sovereignty of the tribes as it related to gaming. *See California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987).

An even more disheartening aspect of this case is the Secretary's attempt to evade responsibility. There can be little doubt that the Secretary was aware in August of 1997 that his "no action" approval would be practically unenforceable and unreviewable, leaving the Pueblos of Sandia and Isleta with no means of vindicating their rights under the IGRA.[7] He even referred in his decision to the "unique history of state and federal court cases" as a basis for his decision not to approve or disapprove the compacts. *See* Secretary's August 23, 1997 Decision. The Secretary's decision makes plain that he considered

---

**6.** In fact, plaintiffs have submitted as supplemental authority a nonbinding opinion by the attorney general of New Mexico setting forth the State's position that the arbitration cannot adjudicate the legality of the revenue sharing and regulatory fees provisions of the compacts. Although the attorney general's opinion has no binding legal effect, it is further evidence that today's decision necessarily leaves the tribes without any means of enforcing their rights under the IGRA.

**7.** Even had the Secretary not been aware of this virtually certain result in 1997, it is the Secretary, after all, who has filed this motion to dismiss for failure to join the State of New Mexico. Despite the Secretary's apparent desire to appear an innocent bystander in this unfortunate situation, he has helped to bring about the difficult position in which the tribes now find themselves.

the revenue sharing and regulatory fee provisions illegal, and yet he declined to disapprove the compacts. Instead, the Secretary approved the compacts and sought to evade responsibility by including a denunciation of the illegal provisions—a denunciation which he must have known would be unenforceable in court.

The Court would also note that, in its opinion, Congress's time might be well spent examining whether the original goals and mechanisms of the IGRA have been emaciated by the judicial and executive branches and whether the statute should be reformed or revised to recalibrate a balance that has tipped drastically in favor of the states at the expense of tribal sovereignty.

A separate order will issue this date.

### ORDER

Upon consideration of defendant's motion to dismiss, plaintiff's opposition thereto, defendant's reply, and plaintiff's supplemental authority, and for the reasons set forth in the memorandum opinion issued this date, it is hereby ORDERED that defendant's motion [6] to dismiss is GRANTED and this action is hereby DISMISSED.

SO ORDERED.