AMERICAN FINANCIAL
CORPORATION,
Plaintiff,

v.

GENERAL ELECTRIC CREDIT
CORPORATION, Defendant.

No. C–1–82–760.

United States District Court,
S.D. Ohio, W.D.

Feb. 23, 1983.

Dennis M. Doyle, Cincinnati, Ohio, for plaintiff.

Lawrence R. Elleman, Cincinnati, Ohio, for defendant.

## OPINION AND ORDER

SPIEGEL, District Judge:

This matter came before the Court for hearing on defendant's motion to dismiss on the ground that Itel Corporation (Itel) is an indispensable party (doc. 4). Plaintiff filed a memorandum in opposition (doc. 5), and defendant replied (doc. 8). Because Itel is a reorganization debtor under Chapter 11 of the Bankruptcy Code, it cannot be made a party to this action. 11 U.S.C. § 362.

The Court concludes that without further knowledge of Itel's rights and obligations as an entity under the protection of the Bankruptcy Court and a better understanding of the relationships between the parties it would be inappropriate to decide at this time whether Itel is an indispensable party. Accordingly, this action is stayed until June 15, 1983. The intent of this stay is to permit the parties to move the Bankruptcy Court for relief from the automatic stay of section 362 so that Itel may appear in this Court for purposes of determining its relationships to the parties with respect to the Lease Service Agreement at issue here.

The following summary of facts is taken from "Notice of Proposed Settlement with General Electric Credit Corporation" filed in the United States Bankruptcy Court for the Northern District of California pursuant to the Chapter 11 proceedings of Itel Corporation (doc. 8, ex. A). Descriptions of certain documents, however, are based on copies of the documents provided to the Court; their location will be indicated where appropriate.

General Electric Credit Corporation (GECC), an industrial credit company, participates in tax-oriented finance leasing of computer, transportation and other large-scale capital equipment. Itel Corporation in the decade prior to filing a Chapter 11 petition was engaged in arranging, or brokering, tax-oriented and other finance lease transactions involving large-scale capital equipment. Itel would arrange for a user to act as lessee of the equipment, for an entity to act as owner and lessor of the equipment, and for one or more lenders to finance the acquisition of the equipment. In some of these transactions Itel would enter into an agreement with the owner/lessor to remarket the equipment whenever the lease expired or was terminated and to receive compensation measured by a share of the proceeds generated by such remarketing. Such an agreement when entered into by Itel and GECC typically was denominated a Lease Service Agreement (LSA).

The subject of this lawsuit is a LSA arranged in 1976 pursuant to which GECC was to act as owner and lessor with respect to a Grumman Gulfstream II executive jet aircraft which would be leased to Great American Insurance (Great American), a subsidiary of American Financial Corporation (AFC). Under this LSA, Itel would have certain rights to remarket the aircraft and to share in the proceeds of the remarketing. Section 4 of the LSA provides:

> [T]he obligations of Itel hereunder to GECC are personal and are not assignable or transferrable to any other party without the express written consent of GECC which consent shall not be unreasonably withheld.

Section 5 provides that any action by Itel adverse to GECC's ownership of the aircraft or entitlement of tax benefits constitutes a breach of warranty (doc. 4, Attachment A).

In March, 1980 Itel announced it would cease payment of principal and interest on most of its public and private unsecured debt instruments, some of which were held by AFC which continued to seek payment. In July, 1980 Itel entered into an agreement with AFC, Great American, and the Provident Bank (AFC Agreement). Under this agreement, Itel purported to assign to AFC its right to receive payments under the 1976 Itel-GECC aircraft LSA and its right to remarket the aircraft (doc. 4, Attachment D, ex. 3—Assignment and Assumption Agreement). In a letter dated July 31, 1980, Itel requested GECC's consent to the assignment (doc. 4, Attachment B). Consent was not given.

Three months later, GECC notified Itel that it was terminating a lengthy list of LSAs and other agreements, including the aircraft LSA (doc. 4, Attachment D, ex. 3). The notice stated that the terminations were pursuant to terms of the agreements, all of which provided that GECC might terminate if it reasonably determined that Itel was unable to perform its obligations under the agreement *see* section 3 of the Aircraft LSA (doc. 4, Attachment A).

On January 19, 1981 Itel filed a petition for reorganization under the Bankruptcy Code in the Bankruptcy Court for the Northern District of California; that proceeding is still pending. AFC filed a proof of claim for $308,400 based upon Itel's purported assignment of its rights under the LSA to AFC (doc. 4, Attachment D). The proof of claim stated that if AFC were successful in enforcing the assignment, the proof of claim would be withdrawn.

In June, 1982, GECC and Itel submitted to the Bankruptcy Court two agreements covering all matters then in dispute between them. After notice to all parties, the Bankruptcy Court approved these settlements (doc. 8, ex. B). The Master Settlement Agreement provides in section 10 that with respect to AFC's proof of claim based upon the Aircraft LSA, GECC and Itel

> entirely reserve [their] rights ... and nothing in this Agreement shall constitute a stipulation, admission or agree-

ment that such claim is to be allowed, disallowed or otherwise substantively disposed of in the Itel [bankruptcy] Proceedings. (doc. 5, ex. A to appendix 1). The Conditional Aircraft Settlement Agreement provides that in the event of "a final judicial determination" that AFC has no rights under the purported assignment, GECC would be deemed to have rescinded its retraction of the LSA. The Conditional Agreement further states that if such a determination is made in a proceeding to which GECC is a party, legal expenses sustained by GECC in that proceeding up to $50,000 shall be deducted from proceeds payable to Itel under the LSA (doc. 5, ex. B to appendix 1).

AFC brought this action seeking a declaration that GECC unreasonably withheld its consent to the assignment of the LSA from Itel to AFC; that the assignment is valid; and that GECC conspired with Itel to deprive AFC of its rights and obligations under the assignment. Because its bankruptcy proceeding is still pending, Itel is protected by the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362, and thus cannot be made a party to this action.

Defendant contends that this action should be dismissed on the ground that Itel is an indispensable party. Rule 19, Fed.R. Civ.P. Itel's presence is critical in determining the validity of the purported assignment from Itel to AFC, including whether GECC's consent was unreasonably withheld, according to defendant. Defendant also asserts that Itel's absence exposes GECC to the risk of incurring double, multiple or otherwise inconsistent obligations. If this Court were to determine that the assignment is valid, AFC would seek to enforce GECC's performance under the LSA. However, defendant points out that the Bankruptcy Court might find the assignment invalid, in which case Itel would also seek performance from GECC, thereby exposing GECC to inconsistent obligations. Accordingly, defendant contends that Itel is a necessary party under Rule 19(a), Fed.R.Civ.P.

Defendant continues, arguing that Itel is also an indispensable party under the essen-

tially equitable test of Rule 19(b), Fed.R. Civ.P. In support, defendant notes that Itel's absence makes it impossible to render a judgment that is not prejudicial to either Itel or the other parties, that relief cannot be shaped so as to avoid that prejudice, that a decision by this Court cannot resolve the whole dispute, and that even if this Court dismisses the action for nonjoinder, plaintiff would have an adequate avenue for relief in the Bankruptcy Court. Defendant also argues that by filing a proof of claim, AFC submitted the validity of the assignment to the Bankruptcy Court and concludes that the Bankruptcy Court is a more appropriate forum because it can resolve the entire dispute between the parties without subjecting GECC to the risk of inconsistent obligations.

Plaintiff's response is that the Master Settlement Agreement and the Conditional Aircraft Settlement Agreement demonstrate that Itel is not an indispensable party and furthermore that GECC and Itel persuaded the Bankruptcy Court that it was an inappropriate forum for determining the validity of the assignment. The Master Agreement excepted from its terms the Aircraft LSA, but also explicitly provided that the exception was not an admission by either Itel or GECC that the claim should be substantively disposed of in the Itel bankruptcy proceeding. Further, plaintiff contends, the Conditional Aircraft Settlement Agreement contemplated resolution of this issue in a separate declaratory judgment; the provision for payment of legal fees by Itel to GECC is proferred as proof that Itel would not be a party to such an action. Plaintiff also describes its proof of claim in the Bankruptcy Court as "protective," insisting that its withdrawal provision evidences AFC's intent that the validity of the assignment be determined outside the Bankruptcy Court. Plaintiff denies that a determination by this Court in Itel's absence will subject GECC to the possibility of inconsistent obligations, arguing that any final determination here will be *res judicata* of the issue. Finally, plaintiff suggests that any risk of prejudice to Itel may be eliminated by careful shaping of the decree.

Rule 19(a), Fed.R.Civ.P., provides in pertinent part:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

A party who meets one of these tests is a necessary party.

The first sentence of Rule 19(b) provides that if a necessary party under Rule 19(a) cannot be joined, the Court shall determine

whether *in equity and good conscience* the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. (emphasis added)

The primary test under 19(b) is equitable: it is the Court's determination that the action cannot equitably be allowed to proceed that renders a party indispensable. In other words, "indispensable" is used in the rule in a conclusory sense only; that is, a party is indispensable only if the Court "in equity and good conscience" determines after a pragmatic consideration of factors enumerated in 19(b) as well as others pertinent to the matter at hand that is preferable to dismiss the action. *Advisory Committee Notes to the 1966 Amendment to Rule 19*, 39 F.R.D. 89, 92–93 (1966).

■ The second sentence of 19(b) provides four factors which the Court is to consider in determining whether it is equitable to allow the parties to proceed:

first, to what extent a judgment rendered in the person's absence might be

prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

The Supreme Court has described those factors as four interests: the plaintiff's interest in having a forum; the defendant's interest in avoiding multiple litigation or inconsistent relief, or sole responsibility for a shared liability; the interest of the outsider whom it would have been desirable to join; and the interest of the courts and the public in complete, consistent, and efficient settlement of controversies. *Provident Tradesmens Bank & Trust v. Patterson,* 390 U.S. 102, 109–11, 88 S.Ct. 733, 737, 738–739, 19 L.Ed.2d 936 (1968).

Plaintiff insists that the Master Settlement Agreement and the Conditional Aircraft Settlement Agreement clearly establish that GECC cannot be exposed to multiple liability nor can Itel be prejudiced. According to this view, if we were to find the assignment valid, GECC could perform under the LSA, AFC would withdraw its proof of claim, and Itel's relationship with GECC would be terminated with respect to this LSA. Withdrawal of the proof of claim would mean that the validity of the assignment would not be tested in Bankruptcy Court and thus GECC could not be subjected to a possible claim by Itel. The Conditional Aircraft Settlement Agreement is cited as evidence that Itel and GECC intended exactly this result.

Defendant, however, states that the intent of GECC and Itel is not clear, pointing to paragraph 34 of the Notice of the Proposed Settlement. That section states:

Provided that the settlement agreements are approved by this court [bankruptcy court] and *Itel thereafter obtains certain judicial determinations regarding the position of AFC* in relation to the Aircraft LSA, GECC would rescind its purported termination of the Aircraft LSA. Itel would thereby be permitted to perform and, given appropriate performance, receive substantial compensation under the Aircraft LSA (doc. 8, ex. A).

GECC interprets this provision to mean that the parties intended Itel—not GECC or any other entity—to initiate judicial determination of the validity of the assignment. Moreover, defendant contends, that because AFC cannot guarantee that Itel will not seek an independent judicial determination of the validity of the assignment, GECC will be in considerable risk of inconsistent obligations were this Court to decide in favor of AFC in Itel's absence.

■ Given these differing interpretations of the interplay between the Proposed Settlement, the Master Settlement Agreement and the Conditional Aircraft Settlement Agreement, we conclude that there are simply too many imponderables for the Court to decide at this point whether Itel is an indispensable party. Our concerns are twofold: the possibility of exposing GECC to multiple or inconsistent obligations and risk of prejudice to Itel. Both concerns arise from our recognition of Itel as two legal persons. Prior to seeking the protection of the Bankruptcy Court, Itel had one status. Once sheltered by the Bankruptcy Code, however, Itel is a new person with different rights and obligations.

First, the LSA at issue is an executory contract and a Chapter 11 debtor has the right either to assume or reject an executory contract. 11 U.S.C. § 365. Second, the AFC–Itel agreement pursuant to which the purported assignment was made occurred approximately six months before Itel filed its Chapter 11 petition and thus could conceivably be challenged as a fraudulent conveyance, 11 U.S.C. § 548, or preferential transfer, 11 U.S.C. § 547. Assuming *arguendo* that this Court held that the assignment from Itel to AFC is valid, it is possible that either the debtor or someone on behalf of the debtor could raise either of the above issues in Bankruptcy Court and obtain a determination contradictory to this Court's holding. In that event, GECC would be

subject to inconsistent obligations and at least conceivably might be forced to initiate yet a third lawsuit to settle this one issue.[1]

The Court also questions whether Itel's interest can be properly protected here in its absence. The automatic stay of the Bankruptcy Code, 11 U.S.C. § 362, precludes our making Itel a party here. Although Itel could appear as an intervenor if it so wished, it has not yet filed such a motion. Nevertheless, we do not know its reasons for not seeking status as an intervenor and accordingly hesitate to decide that its interest can be protected in its absence.

The automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362, provides:

> (d) On request of a party in interest and after notice in a hearing, the [bankruptcy] court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—
>> 1. for cause, including the lack of adequate protection of an interest in property of such party in interest ...

Thus if either the plaintiff or the defendant in this action requests relief from the automatic stay for purposes of the proceedings in this Court and relief is granted, Itel can appear in this Court so that we may make the factual determinations necessary to a decision on the issue of whether Itel is an indispensable party. Itel's appearance in this Court should assist us in understanding the relationships of the parties to each other and to the LSA, the effect of the bankruptcy proceeding on the LSA, and the intent of the parties in the various agreements, all of which are important in determining whether equitable considerations require that Itel be joined in this action. Furthermore, although the benefits of the LSA are substantial, payment is not due under this agreement until 1988. We conclude, therefore, that staying this action for one hundred and twenty days (120) will not prejudice either of the parties.

Accordingly and pursuant to the authority granted this Court to make all orders necessary in aid of its jurisdiction, 28 U.S.C. § 1651, we Order this action stayed until June 15, 1983 so that the parties may seek relief from the automatic stay of the Bankruptcy Code for the purposes of these proceedings. At that time, or earlier if they prefer, the parties may request either a continuation of the hearing on defendant's motion, an extension of the stay, or such other action as they believe appropriate. In any event, the parties jointly are to advise the Court by June 15, 1983 of the status of any proceedings in the Bankruptcy Court.

SO ORDERED.

---

1. AFC raises the statute of limitations with respect to both Itel's right to assume or reject the contract and the issue of a preferential or fraudulent transfer. In our view, however, the statute of limitations issue is yet another example of the imponderables we face if we were to decide the indispensable party issue at this time.