**COUNTY SANITATION DISTRICT NO. 2 OF LOS ANGELES COUNTY, a Public Agency, Plaintiff-Appellant,**

v.

**INLAND CONTAINER CORPORATION, a Delaware corporation, Defendant-Appellee.**

No. 85–6554.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 11, 1986.

Decided Nov. 4, 1986.

Daniel V. Hyde, Los Angeles, Cal., for plaintiff-appellant.

Orville O. Orr, Jr., Los Angeles, Cal., for defendant-appellee.

Before CANBY, REINHARDT, and NOONAN, Circuit Judges.

CANBY, Circuit Judge:

Los Angeles County Sanitation District No. 2 ("the District") appeals an order of the district court dismissing its claim for a permanent injunction against Inland Container Corporation. The District sought to restrain Inland from discharging industrial wastewater from its plant in San Bernardino, California, into the disposal system of Chino Basin Municipal Water District ("Chino"), which empties into the District's disposal system. We reverse the judgment of the district court and remand the case to be dismissed for failure to join Chino as an indispensable party.

### Facts

The District operates a sewage treatment and disposal system in Los Angeles County. After appropriate treatment, non-reclaimable wastewater that passes through the District's system is discharged into the ocean. Inland operates a new $130 million paper mill and box plant in San Bernardino County. Wastewater from that plant is discharged into sewage lines owned by Chino.

Chino does not treat the nonreclaimable wastewater it receives into its lines, nor does it have an ocean outlet. Instead, Chino discharges its wastewater into the District's system for treatment and ultimate disposal, under the terms of a 1966 contract between Chino and the District. Under the agreement, Chino paid a one-time capital charge, and is not liable to the District for any other capital costs. Chino is assessed an annual advance fee, based on its anticipated use of the District's system, with adjustments at year's end to reflect actual use. Chino's discharges must meet certain quality standards. The District may consent to discharges exceeding quality standards, in which case an additional charge is imposed. In certain cases of extreme violations of quality standards, the District is entitled to refuse Chino's discharges. Finally, under the 1966 contract, the District must approve before Chino can permit new industrial users to connect to Chino's system.

When Inland elected to build its plant, it proposed to Chino the discharge of an anticipated one million gallons per day of nonreclaimable wastewater into Chino's system. Chino referred the proposal to the District, pursuant to the 1966 agreement. The District responded that, although it had capacity to receive one million gallons per day, Inland would have to pretreat its discharge to meet quality standards. After a meeting in September 1981 among the District, Inland and Chino, the outcome of which is in dispute, Inland proceeded to build its plant.

In 1984, Inland formally applied to Chino for a discharge permit. Chino referred the matter to the District, which refused to approve a permit unless Inland agreed to pay a connection fee of $1.75 million. Inland and Chino took the position that the District had no authority to charge a connection fee, and that the District's power was limited to fee assessments or other remedies against Chino pursuant to the terms of the 1966 contract. After a period of continuing dispute, Chino unilaterally issued Inland a discharge permit. Inland then discharged wastewater into the system and the District filed this diversity action against Inland alone.

The District's complaint set forth three claims for relief. The first claim alleged that Inland's discharge without a permit from the District violated the District's Wastewater Ordinance; it sought payment of the connection fee and civil penalties for violation of the Ordinance. The second claim sought an injunction against further discharge in violation of the permit Ordi-

nance. The third claim was for a declaration that the District had authority to regulate Inland, notwithstanding the 1966 contract or Inland's location within Chino's boundaries.

The District first moved for a preliminary injunction, which the district court denied on the ground that the District faced no irreparable harm. The court found that Inland's discharges were not a strain on the District's system, that they presented no danger to the environment, that the District's grievance was primarily monetary, reflecting costs of additional water treatment, and that the District did not face fines and penalties for noncompliance with federal law if the District was unable to impose its permit requirement on Inland directly. Any damages suffered by the District could be recovered at law.

Inland subsequently moved to dismiss the first two claims for failure to state claims upon which relief could be granted, and to dismiss the third claim for failure to join Chino as an indispensable party. The district court granted the motion to dismiss the second claim, seeking a permanent injunction, for failure to state a claim upon which injunctive relief could be granted. The court relied primarily on its prior ruling in denying the preliminary injunction: that there had been no showing of irreparable harm and that an adequate remedy at law existed in an award of the requested permit fee plus interest and penalties.

The district court then held that the first claim, for damages against Inland for violation of the District's Ordinance, was dependent upon the success of the third claim, for a declaration that the District had power, notwithstanding the 1966 contract and the geographical location of Inland, to impose the requirements of its Ordinance directly upon Inland. The third claim, in turn, could not be decided in favor of the District without construing the 1966 agreement between the District and Chino in a way that compromised Chino's interests. Chino therefore was a party that had to be joined under Rule 19(a), Federal Rules of Civil Procedure.

Chino could not be joined as a defendant without destroying the court's diversity jurisdiction, so the district court was required to decide whether "in equity and good conscience" the action could proceed without Chino. Fed.R.Civ.P. 19(b). After weighing the factors set forth in Rule 19(b), the district court concluded that the action could not proceed. Not only would Chino's rights under the 1966 contract to protect its system's users from outside regulation be compromised, but needless duplication of litigation would ensue because Chino would ultimately bring its own action.

The district now appeals only the dismissal of its second claim, that which sought injunctive relief against Inland. It concedes that Chino was an indispensable party for the other two claims, and they that could not be adjudicated without Chino.

### Issues

1. Whether the claim for injunctive relief must be dismissed for failure to join Chino as an indispensable party whose joinder would destroy diversity jurisdiction.

2. Whether the district court erred in dismissing the claim for permanent injunctive relief on the grounds that there had been no showing of irreparable harm and that an adequate remedy at law existed.

### Discussion

1. *Failure to Join Indispensable Party.*

■ At oral argument we asked the parties to address the question of Chino's indispensability to the adjudication of the injunction claim. Our review of the record convinced us that all of the same considerations that made Chino indispensable to decision of the other two claims made it indispensable to decision of the injunction claim. An injunction enforcing the District's Ordinance against Inland would have been at least as prejudicial to Chino's interests as a declaratory judgment to the same effect. Indeed, the parties do not seriously dispute that fact.

In its supplementary brief,[1] however, Inland argues that Chino's absence as an indispensable party ought not to prevent us from affirming the district court's judgment on the merits. Inland relies on *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), in which the Supreme Court upheld a judgment despite the absence of a party who should have been joined. In *Provident*, the Court held that, where the failure to join an indispensable party was not raised in the trial court, an appellate court should weigh the factors set forth in Rule 19(b) "entirely from an appellate perspective." *Id.* at 109, 88 S.Ct. at 737. That approach means that the outcome of the case at the trial level must be taken into account by the appellate court in determining the factor of prejudice to the absent party. *Id.* at 114, 88 S.Ct. at 740. Inland contends that application of the same perspective to this case permits affirmance of the district court's ruling on the injunction because that ruling, being adverse to the District, cannot now harm Chino's interests. *See id.; Sierra Club v. Hathaway*, 579 F.2d 1162, 1166–67 (9th Cir. 1978).

Even if we found no obstacles to affirming the district court's order on the merits, we would have difficulty accepting Inland's application of *Provident* to this case. First, we have difficulty characterizing this case as one in which the failure to join an indispensable party was not raised at the trial level. Inland itself raised the issue with regard to the third claim. The district court on its own motion added the first claim to its consideration and then ruled that the action, consisting of those two surviving claims, could not "in equity and good conscience" proceed without Chino. Certainly the issue of indispensability of Chino to the second claim was not entirely outside the notice of Inland or the district court. Equally certainly, if the Rule 19(b) balancing had been done with respect to the injunction claim, it could not have proceeded without Chino. On this record, we

question that this case qualifies as one in which "the matter of joinder was not considered in the trial court." *Provident*, 390 U.S. at 109, 88 S.Ct. at 737.

Second, we are unable, for reasons explained below, to uphold the ruling of the district court on the present record. While further proceedings on the merits may still defeat the injunction claim, that result cannot be foretold with certainty. It therefore cannot be said that Chino's interests are no longer at risk. Because a remand is in order, we are not in the same posture as the court of appeals in *Provident* and may not view the issue of indispensability "entirely from an appellate perspective." *Id.* at 109, 88 S.Ct. at 737. On the contrary, many of the factors illuminated by the Supreme Court in *Provident* require that, upon remand, the district court dismiss the injunction claim for failure to join Chino.

"[Rule 19] emphasizes practical consequences and its application depends on the circumstances of each case." *Takeda v. Northwestern National Life Insurance Co.*, 765 F.2d 815, 819 (9th Cir.1985) (citing *Provident*, 390 U.S. at 118–19, 88 S.Ct. at 742–43). In *Provident*, the Supreme Court relied in part on the fact that the case under appeal had been fully tried, and had been pending for ten years. The interests of judicial economy greatly favored preservation of the result. *Provident*, 390 U.S. at 111, 88 S.Ct. at 738. The Supreme Court also faulted the court of appeals for preferring the alternative of state court litigation when it was not clear that all parties would have a chance to litigate their positions in state court. *Id.* at 126–27, 88 S.Ct. at 746–47. In the present case, neither of these two factors is present; the injunctive claim was dismissed on motion prior to discovery, and the entire controversy will almost certainly have to be litigated in state court, in which all parties will have an opportunity to present their cases. *See Takeda*, 765 F.2d at 821.

---

1. Inland's motion to file a supplemental brief is granted. Inland's supplemental brief, and the District's supplemental brief replying to it, are ordered filed.

On remand, the district court will still be in an early stage of this litigation. It has already decided, in a ruling not disputed by either of the parties, that a decision on the applicability of the Ordinance "will probably result in a needless and inefficient duplication of litigation concerning the 1966 agreement." Any further proceedings on the injunctive claim risk such duplication of effort because the claims are almost inextricably interrelated—far more so than the claims of independent plaintiffs involved in *Provident.*

As long as the outcome of the injunction claim in district court is in any doubt, the Rule 19(b) factors clearly militate in favor of dismissal. First, Chino's interests may be adversely affected, for reasons already found by the district court in ruling upon the third and first claims. Second, no feasible way of tailoring a decree to protect Chino's interests appears. Third, a judgment on the injunctive claim is adequate only if it favors Inland, and even then it decides a very small portion of an unusually integrated controversy. Fourth, the parties have adequate remedies elsewhere if the claim is dismissed for nonjoinder of Chino.

In light of all of these considerations, we conclude that, upon remand, this case must be dismissed pursuant to Rule 19(b) for failure to join Chino.

2. *Merits of the District Court's Denial of Injunctive Relief.*

■ The district court dismissed the claim for injunctive relief in response to Inland's Rule 12(b)(6) motion. Because matters outside of the pleadings were presented to the district court, the motion must be treated as one for summary judgment under Rule 56. We review summary judgments *de novo* to determine whether any genuine issue of material fact existed and whether the substantive law was correctly applied. *Lojek v. Thomas,* 716 F.2d 675, 677 (9th Cir.1983). The parties agree that in this diversity case, California law sets the standard for the granting of injunctive relief.

The district court's order denying a permanent injunction briefly reiterated the grounds it had already relied upon in denying a preliminary injunction—that there was no showing of irreparable harm and that the District had an adequate remedy at law in an award of the requested permit fee plus interest and penalties. In denying the preliminary injunction, the district court had found that the essence of the District's suit was monetary, that it had the ability to treat Inland's wastewater without undue strain on its system, and that denial of the injunction would not subject the District to fines and penalties under the Federal Clean Water Act.

The District takes issue with many of these findings, but we need only to deal with one contention. The District argues that a genuine issue of material fact exists as to whether the essence of the District's suit is monetary. We agree.

There is a dispute in the record over whether the District ever agreed to accept Inland's wastewater quality. Inland interprets the meeting of September 1981 among Inland, Chino and the District, as indicating agreement on Inland's quality standards, and views the September 30, 1981, letter of Chino's Mr. Coe as confirming that fact. The District, however, presented Mr. Kremer's affidavit that there was no such acceptance of Inland's water quality at the September 1981 meeting, and that Mr. Coe's letter contemplates additional quality requirements to be imposed by the District. The documents, including the District's later offer of a permit if a connection fee of $1.75 million were paid by Inland, do not conclusively establish that the District was not insisting on the right further to regulate the quality of Inland's discharges. A genuine dispute on this issue does exist.

The dispute is over a material point. It is quite true, as the district court held, that a *preliminary* injunction might properly be denied on the ground that damages could adequately compensate the District for any harm caused by Inland's discharges during the pendency of the litigation. But

if part of the thrust of any of the District's three claims, supported by the District's course of dealing with Chino and Inland and the needs of its system, was to establish the District's right to regulate Inland as well as to protect itself from monetary losses, then the denial of *permanent* injunctive relief was premature at best.

If it is ultimately determined, in state court litigation of the two claims that were dismissed for failure to join Chino, that the District as a public entity does have direct regulatory authority over Inland, it is possible that the District would be entitled to injunctive relief to enforce that authority over persistent violators, rather than being relegated to a multiplicity of suits to collect civil penalties. *See* Cal.Civ.Proc.Code § 526(6) (West 1979). Its right to such relief should not be precluded in advance of the determination of its regulatory authority, on the ground that violations, repeated or not, cause only damage that is remediable by the payment of money. At least it should not be precluded without an examination of the issues of public law and policy involved in enforcement of whatever regulatory powers the District is determined to have. Yet that is one potential effect of allowing to stand the district court's decision denying the District the right to permanent injunctive relief. At the very least, that ruling cannot stand in the face of a dispute of fact over whether the District's injury is wholly a financial one.

We therefore reverse the district court's summary judgment denying the District permanent injunctive relief. Our ground for doing so, that there is a genuine dispute of material fact over the question whether the District's injury is partly regulatory, reinforces our earlier conclusion that the District's second claim for relief is so intertwined with its other two claims that all three should be adjudicated in the same forum.

## Conclusion

The summary judgment denying the District permanent injunctive relief is reversed. The case is remanded to the district court with instructions to dismiss the claim for injunctive relief for failure to join Chino. Fed.R.Civ.P. 19(b).

REVERSED and REMANDED with instructions.

NOONAN, Circuit Judge, dissenting:

Since 1966 the District has had a comprehensive contract with Chino, entitled the Waste Water Capacity Agreement, governing the discharge of wastewater from Chino into the sewer system of the District. Chino has permitted Inland to make discharges into the Chino system, and these discharges ultimately enter the District's system. The District contends that it has a right to stop Inland and asks for an injunction.

Chino is an indispensable party. Each of the three causes of action asserted by the District required interpretation of its contract with Chino. The first cause of action put forward the District's rights under the District's own Wastewater Ordinance; but these rights were affected as to water from Chino by the contract with Chino. The second cause of action asserted the District's obligations under federal law; but any appraisal of these obligations as to water from Chino depended on the control the District had over such water through the contract with Chino. The third cause of action actually sought declaratory relief in interpretation of the contract between the District and Chino. Chino's rights and obligations were immediately at issue in the third cause of action; and Chino's contract, and so its rights and obligations, had to be interpreted to resolve the first two cause of actions.

Chino was indispensable. It was not sued. Failure to sue Chino did not deprive the district court of jurisdiction. It did deprive the District of the opportunity of getting the relief it sought. Asking for the exercise of the equitable powers of the court, the District has behaved inequitably. It has sought to have the rights and obligations of Chino determined in the absence of Chino.

When counsel for the District was asked in open court, on the argument of the appeal, why the District had not made Chino a party, he replied, "It would have de-

stroyed diversity." This candid answer stated the obvious. In order to have access to the federal courts in this case, the District could not have a California defendant. The desire to have a federal forum is no excuse for the District's inequitable conduct.

The District's conduct was doubly inequitable in its attempt to avoid the arbitration provisions of the contract with Chino. The Waste Water Capacity Agreement provided:

In the event of a dispute or controversy arising between Chino Basin and District 21 as to the construction of any term, condition, provision or covenant contained herein, or as to the amount of money payable by Chino Basin to District 21, pursuant to the terms hereof, or dispute as to the rights or obligations of either of the parties hereto, all such questions shall be referred to and determined by a Board of Arbitrators. The parties hereto do hereby agree that all differences, disputes and controversies which may arise at any time concerning the construction or application of the terms, covenants, conditions and provisions of this agreement, shall be submitted by the parties to arbitration by a Board of Arbitrators, one to be appointed by each party to this agreement and the third to be appointed by the two arbitrators so appointed by the two arbitrators so appointed.

This clause bound the District if it was to raise with Chino the issues it seeks to raise in this suit.

In argument before the district court, on October 9, 1985, that court noted "some real problems with not joining the Chino District." Daniel V. Hyde, counsel for the District, replied, "Well, the problem with that is that there is a binding arbitration clause in the contract with them which.... which then leaves the District with no ability to proceed against Inland Container at all in this court." The present suit was an end run around the binding arbitration clause. Arbitration would have provided the answer to the issues the District here raises. The District should not be permitted to ignore its contractual obligation to Chino.

The District chose to bring an inequitable suit asking equitable relief. The District could not win. It could only lose. It has lost in the trial court. Having invoked federal jurisdiction and having imposed on Inland the burden of defending itself, the District should not now be permitted to walk away from the litigation without consequences. On this appeal, we are entitled to sustain the district court on any ground before us in the record. *Hatch v. Reliance Insurance Co.*, 758 F.2d 409 (9th Cir.1985). The record proclaims the unjust attempt of the District to obtain a federal judgment affecting its contract with Chino without Chino being heard. He who seeks equity must do equity. The district court properly denied relief to this inequitable plaintiff.