## CHICAGO METROPOLITAN SKI COUNCIL, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 21745–93.  Filed March 22, 1995.

*Fred M. Ackerson,* for petitioner.
*William I. Miller,* for respondent.

### OPINION

DAWSON, *Judge:* This case was assigned to Special Trial Judge D. Irvin Couvillion pursuant to section 7443A(b)(4) and Rules 180, 181, and 183.[1] The Court agrees with, and adopts, the opinion of the Special Trial Judge, which is set forth below.

### OPINION OF THE SPECIAL TRIAL JUDGE

COUVILLION, *Special Trial Judge:* Respondent determined deficiencies in Federal income taxes of $3,890 and $3,560 for petitioner's fiscal years ending June 30, 1987 and 1988, respectively.

After a concession by petitioner,[2] the remaining issue for decision is whether petitioner, a social club exempt under section 501(c)(7), may deduct, pursuant to section 1.512(a)–1(f), Income Tax Regs., expenses attributable to its publication of a periodical in computing its unrelated business taxable income (UBTI) as defined in section 512(a)(3)(A).

The parties submitted this case fully stipulated under Rule 122. All of the stipulated facts are so found, and those facts,

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Petitioner earned interest income for the years ending June 30, 1987, and June 30, 1988, in the amounts of $945 and $1,353, respectively. Petitioner concedes that it is liable for unrelated business income taxes on this investment income.

with the annexed exhibits, are incorporated herein by reference. Petitioner was a nonprofit corporation organized under the laws of the State of Illinois with its principal place of business at Chicago, Illinois, at the time it filed its petition in this case.

Petitioner was incorporated under the laws of the State of Illinois in 1957. In October 1958, petitioner was granted exempt organization status by the Internal Revenue Service as a social club described in section 501(c)(7).[3]

Petitioner's primary objective is to serve member ski clubs through the promotion of skiing activities and fellowship among skiers. Petitioner's activities include the sponsorship or support of ski trips, ski seminars, ski races and awards, and ski equipment shows, and the publication of the Midwest Skier magazine (the magazine).

Petitioner's members include ski clubs in the greater Chicago area and individuals; associate members include taxable for-profit companies with an interest in the ski industry. During the years at issue, petitioner had approximately 95 ski clubs as members, 500 individuals as members, and 125 associate members.

Petitioner derives income from membership dues, program service fees from members and guests, investment income, and the sale of advertising space in its publication.

During each year at issue, petitioner published an annual directory issue of the magazine, plus four quarterly issues of the magazine. The annual directory of the magazine is published each year in a quantity of 18,000 magazines, and the four quarterly issues are published each year in a quantity of 4,000 or 5,000 magazines for each issue. Approximately 3,000 copies of each of these five issues (or approximately 15,000 of 35,000 total copies of all five issues) are distributed to petitioner's membership, and the remainder are distributed without charge to the skiing public. The annual directory is published each year in conjunction with a major regional ski industry show, and most copies of the annual directory are given to nonmembers at this ski show. The remaining copies of the annual directory and the quarterly

---

[3] Sec. 501(c)(7) provides for the exemption from Federal income tax of clubs organized and operated for pleasure, recreation, and other nonprofitable purposes, substantially all of the activities of which are for such purposes, and no part of the net earnings of which inures to the benefit of any private shareholder.

issues of the magazine are distributed to the public primarily by placement in ski equipment shops. There is no charge to either members or nonmembers for any issue of the magazine.

Petitioner received advertising revenue associated with the publication of the magazine. The advertisers in the magazine consist primarily of ski resorts, travel agencies, ski equipment manufacturers, and other businesses related to the ski industry. Petitioner received $40,296 and $39,383 advertising revenue from its publication of the magazine in its taxable years ending June 30, 1987, and June 30, 1988, respectively. Petitioner received no other revenue from its publication during the years at issue. The amounts received by petitioner from advertising constitute gross income includable in the computation of "unrelated business taxable income" under section 512(a)(3) and do not constitute exempt function income under the same section. Neither party questions this.

Petitioner's expenses from its publication of the magazine for the taxable years ending June 30, 1987 and 1988, respectively, totaled $36,311 and $40,185. These publication expenses included the following:

|  | Year ending June 30, 1987 | Year ending June 30, 1988 |
| --- | --- | --- |
| Supplies | $112 | $25 |
| Postage and shipping | 778 | 595 |
| Printing | 35,421 | 39,500 |
| Travel | - - - | 65 |
| Totals | 36,311 | 40,185 |

None of the expenses claimed included compensation to officers, employees, or members of petitioner, nor any other fixed or overhead expenses of petitioner.

During respondent's audit of petitioner, respondent initially determined, in a letter dated October 28, 1989, that in computing petitioner's UBTI, all publication expenses were deductible, and respondent tentatively allowed, under section 1.512(a)–1(f), Income Tax Regs., the deduction of the publication expenses of $36,311 and $40,185, respectively, for the 2 years at issue. Under this tentative methodology, and with the inclusion of petitioner's interest income, petitioner's tax liabilities were determined to be $589 and $53, respectively,

for taxable years ending June 30, 1987 and 1988. At that time, petitioner filed returns (Internal Revenue Service (IRS) Forms 990–T, Exempt Organization Business Income Tax Return) with respondent, reflecting tax liabilities in the above amounts, and paid the amounts due.[4]

Respondent subsequently reconsidered her position and determined that section 1.512(a)–1(f), Income Tax Regs., does not apply to organizations exempt as social clubs under section 501(c)(7) and, therefore, not all of petitioner's publication expenses were deductible. In the notice of deficiency, respondent allowed only 39.823 percent of the publication expenses as a deduction in the computation of petitioner's UBTI for each year at issue. The amount of expenses allowed by respondent is based solely on the fraction of the total space, or linage, taken up by advertising in petitioner's publications of the magazine, which respondent refers to as "direct advertising" expenses. Respondent's determination did not take into account other factors, such as the cost or expense of advertising versus nonadvertising space, the cost or expense of color advertising, or similar factors. Accordingly, respondent allowed $14,460 and $16,003 of publication expenses as deductions from petitioner's unrelated business taxable income for the years ending June 30, 1987 and 1988, respectively.

In the event the Court determines that section 1.512(a)–1(f), Income Tax Regs., applies to social clubs, as defined in section 501(c)(7), all of petitioner's publication expenses would be deductible in the computation of its UBTI, and petitioner's tax liabilities for the years ending June 30, 1987 and 1988, would be $589 and $53, respectively.[5]

The determinations of the Commissioner in a notice of deficiency are presumed correct, and the burden of proof is on the taxpayer to show that the determinations are incorrect. Rule 142(a); *Welch v. Helvering,* 390 U.S. 111, 115 (1933).

---

[4] Although petitioner paid the amounts of $589 and $53, respectively, for the 2 years at issue, the notice of deficiency stipulated into evidence does not state that petitioner agreed to a waiver and assessment for these amounts. Consequently, petitioner has not been assessed for these amounts.

[5] The Court notes that the parties have framed the issue as whether or not sec. 1.512(a)–1(f), Income Tax Regs., is *applicable* to sec. 501(c)(7) organizations, and not whether the expenses claimed are allowable deductions as expenses "directly connected with" the production of its income, as provided in sec. 1.512(a)–1(f), Income Tax Regs.

Section 511(a) provides for the imposition of a tax on the UBTI of certain section 501(c) organizations. Section 512(a)(1) generally provides that the term "unrelated business taxable income" means the gross income derived by any organization from any unrelated trade or business (as defined in section 513) regularly carried on by it, less deductions allowed that are directly connected with the carrying on of such trade or business, both computed taking into consideration the modifications provided in section 512(b).[6]

Section 512(a)(3)(A) provides an exception to the general rule set out in section 512(a)(1) with respect to social clubs exempt under section 501(c)(7), among other organizations. As applied to social clubs, section 512(a)(3)(A) provides an alternative method for determining such organization's UBTI. *Ye Mystic Krewe of Gasparilla v. Commissioner*, 80 T.C. 755, 764 (1983). Section 512(a)(3)(A) provides, in pertinent part:

(A) GENERAL RULE.—In the case of an organization described in paragraph (7), (9), (17), or (20) of section 501(c), the term "unrelated business taxable income" means the gross income (excluding any exempt function income), less the deductions allowed by this chapter which are directly connected with the production of the gross income (excluding exempt function income), both computed with the modifications provided in paragraphs (6), (10), (11), and (12) of subsection (b). * * *

Essentially, the difference between section 512(a)(1) and section 512(a)(3)(A) is that, under section 512(a)(1), UBTI consists solely of net income realized in the conduct of an unrelated trade or business, whereas under section 512(a)(3)(A) UBTI consists generally of all income, whether or not trade or business income, with the only exception being income realized from the members in the performance of the organization's exempt functions. Thus, section 512(a)(3)(A) requires social clubs, as section 501(c)(7) organizations, to include virtually all of their gross income, other than exempt function income such as membership dues, as gross income subject to unrelated business income tax.[7]

---

[6] Sec. 513(a) defines an "unrelated trade or business" as any trade or business the conduct of which is not substantially related to the exercise or performance by such organization of its exempt purposes.

Sec. 512(b), which provides modifications to the determination of unrelated business taxable income, is not pertinent to the issue in this case.

[7] Additionally, sec. 512(a)(3)(A) does not allow an exclusion for investment income as is permitted under sec. 512(b). The modifications provided in sec. 512(b) that are applicable to social

Nevertheless, with regard to the deductibility of expenses in computing UBTI, the language used in section 512(a)(1) and 512(a)(3)(A) is similar. Each of those paragraphs refers to gross income *"less the deductions allowed by this chapter which are directly connected with"* such income. (Emphasis added.)

The legislative history of section 512 explains why Congress provided an alternative method for determining the UBTI of social clubs. Prior to the Tax Reform Act of 1969, Pub. L. 91–172, 83 Stat. 487 (the Act), social clubs were not subject to a tax on unrelated business income under section 511. The Act subjected social clubs to the tax on unrelated business income for taxable years beginning after December 31, 1969. Congress broadly defined the types of gross income for which social clubs could be subject to tax and denied social clubs the exclusion from income tax for investment income by adding section 512(a)(3) to the Code.[8] Congress decided that social clubs, unlike exempt organizations referred to in section 512(a)(1), should be taxed on their passive income. In effect, income derived from nonmembers was made subject to tax. See *Portland Golf Club v. Commissioner*, 497 U.S. 154 (1990). The legislative history of the Act indicates that Congress felt that a social club's income, other than its exempt function income, served to subsidize the exempt functions of such organizations and thus provided a tax advantage to such organizations which the Act sought to eliminate. See S. Rept. 91–552 (1969), 1969–3 C.B. 423, 469; H. Rept. 91–413 (1969), 1969–3 C.B. 200, 231–232.

The Act did not, however, make any changes with respect to the deductibility of expenses associated with UBTI. The "directly connected with" language is used in both section 512(a)(1) and section 512(a)(3)(A). This language contains no special rules with respect to the deductibility of expenses for social clubs.

---

clubs (i.e., sec. 512(b)(6), (10), (11), (12)), do not involve the exclusion of income from investments.

[8] Prior to the Act, sec. 512(a) provided:

SEC. 512(a). DEFINITION.—The term "unrelated business taxable income" means the gross income derived by any organization from any unrelated trade or business (as defined in section 513) regularly carried on by it, less the deductions allowed by this chapter which are directly connected with the carrying on of such trade or business, both computed with the exceptions, additions, and limitations provided in subsection (b). * * *

Keeping in mind the aforementioned principles and history, the Court addresses the Treasury regulations that are at issue in this case. Section 1.512(a)–1(a), Income Tax Regs., provides, in pertinent part:

(a) *In general.* Except as otherwise provided in § 1.512(a)–3, § 1.512(a)–4, or paragraph (f) of this section, section 512(a)(1) defines "unrelated business taxable income" as the gross income derived from any unrelated trade or business regularly carried on, less those deductions allowed by chapter 1 of the Code which are directly connected with the carrying on of such trade or business, * * *. * * * Except as provided in paragraph (d)(2) of this section, to be "directly connected with" the conduct of unrelated business for purposes of section 512, an item of deduction must have proximate and primary relationship to the carrying on of that business. * * *

Further, section 1.512(a)–1(f), Income Tax Regs., provides specific rules pertaining to the deductibility of expenses attributable to UBTI derived from the sale of advertising in the publication of periodicals by exempt organizations. See, e.g., *American Medical Association v. United States,* 887 F.2d 760 (7th Cir. 1989) (applying the regulation to a section 501(c)(6) organization). That section states, in pertinent part:

(1) In general. Under section 513 (relating to the definition of unrelated trade or business) and § 1.513–1, amounts realized by an exempt organization from the sale of advertising in a periodical constitute gross income from an unrelated trade or business activity involving the exploitation of an exempt activity, namely, the circulation and readership of the periodical developed through the production and distribution of the readership content of the periodical. * * * *Thus, subject to the limitations of paragraph (d)(2) of this section, where the circulation and readership of an exempt organization periodical are utilized in connection with the sale of advertising in the periodical, expenses, depreciation, and similar items of deductions attributable to the production and distribution of the editorial or readership content of the periodical shall qualify as items of deductions directly connected with the unrelated advertising activity.* * * * [Sec. 1.512(a)–(1)(f), Income Tax Regs.; emphasis added.]

Respondent's position is that section 1.512(a)–1(f), Income Tax Regs., is "inapplicable" to social clubs (organizations referred to in section 512(a)(3), which, among others, includes social clubs under section 501(c)(7)). Under respondent's theory, only the expenses directly attributable to petitioner's advertising income are deductible.[9] Respondent

---

[9] Since the advertising took up 39.823 percent of the linear space of petitioner's publications, respondent contends only 39.823 percent of the claimed publication expenses is deductible, as

agrees that the regulation does not specifically state that it is inapplicable to social clubs, but argues, by implication, that section 1.512(a)–1(f), Income Tax Regs., applies only to organizations that are subject to section 512(a)(1), and therefore organizations such as petitioner, subject to section 512(a)(3)(A), are not subject to section 1.512(a)–1(f), Income Tax Regs. In support of this position, respondent relies on the following: (1) Section 1.512(a)–1(a), Income Tax Regs., which makes reference to section 1.512(a)–1(f), Income Tax Regs., begins by defining "unrelated business taxable income" as it is defined in section 512(a)(1); (2) the first sentence of section 1.512(a)–1(f), Income Tax Regs., refers to "unrelated trade or business", a term not used in section 512(a)(3); and (3) section 1.512(a)–1(f), Income Tax Regs., makes no reference to section 512(a)(3).

Respondent's attempt to limit the application of the regulation does not take into account the legislative history of section 512(a)(3)(A). The Senate report explains the extension of the unrelated business income tax to social clubs in two separate sections, one dealing with income from business activities and one dealing with investment income and other income from nonmembers. See S. Rept. 91–552, *supra,* 1969–3 C.B. at 467–471. As discussed above, social clubs are treated differently from organizations described in section 512(a)(1) with respect to investment income and other income from nonmembers. With respect to income from an unrelated trade or business, social clubs and organizations described in section 512(a)(1) are treated the same:

In recent years, many of the exempt organizations not now subject to the unrelated business income tax—such as * * * social clubs * * *—have begun to engage in substantial commercial activity. * * * it is difficult to justify taxing a university or hospital which runs a public restaurant or hotel or other business and not tax a country club or lodge engaged in similar activity. * * * Both the House bill and the committee amendments extend the unrelated business income tax to all exempt organizations * * * [S. Rept. 91–552, *supra,* 1969–3 C.B at 467.]

Thus, Congress sought to include the business income of a social club within UBTI.

From the structure of the legislative history, it appears that Congress wished to extend the concept of UBTI to two

noted earlier.

types of income associated with social clubs: (1) Income from an unrelated trade or business and (2) investment income and other income from nonmembers. Moreover, there are different policy justifications for the extension of each aspect of UBTI to social clubs: (1) To tax business income, Congress relied on the policy that the business income of all exempt organizations, including social clubs, should be taxed; (2) to tax investment and other income, Congress relied on the policy of not subsidizing social clubs. See S. Rept. 91–552, *supra,* 1969–3 C.B. at 467–471. Thus, the concept of unrelated trade or business has meaning for social clubs because Congress intended to extend the unrelated business income tax to income from an unrelated trade or business carried on by a social club.

In addition, there is nothing in these regulations specifically stating that the same principles regarding the deductibility of expenses are not equally applicable to all exempt organizations, whether the UBTI of such organizations comes under section 512(a)(1) or section 512(a)(3)(A). Section 1.512(a)–1(f), Income Tax Regs., provides for the deduction of those expenses "directly connected with unrelated advertising activity". The Court notes that section 512(a)(1) likewise allows a deduction for all expenses "directly connected with" any unrelated trade or business activity of an exempt organization. Section 512(a)(3)(A), which applies to some exempt organizations such as section 501(c)(7) organizations, also allows a deduction for expenses "directly connected with" the production of an exempt organization's gross income. In *Ye Mystic Krewe of Gasparilla v. Commissioner,* 80 T.C. at 766–767, this Court held that, for purposes of section 512(a)(3)(A), a similar test must be applied in determining what constitutes expenses "directly connected with", as that term is used in section 512(a)(1). The regulation at issue in this case, section 1.512(a)–1(f), Income Tax Regs., also provides, with respect to advertising income from publication of a periodical, for the deduction of expenses "directly connected with" the advertising activity. There is no language in section 1.512(a)–1(f), Income Tax Regs., that states that the regulation is inapplicable to social clubs or other organizations whose UBTI is computed under section 512(a)(3).

Respondent also argues that if petitioner, as a section 501(c)(7) organization, is allowed a deduction for all of the

publishing expenses, its social activities will be enhanced or subsidized. Thus, petitioner, as a social club, will enjoy a tax advantage that frustrates the policy reflected in the legislative history of the Act, subjecting to tax all nonmember income of social clubs. Respondent's position proves too much because it can be used to argue that the regulation also does not apply to organizations referred to in section 512(a)(1). The Supreme Court has provided that "Taxes are levied on 'unrelated business income' only in order to prevent tax-exempt organizations from gaining an unfair advantage over competing commercial enterprises." *Portland Golf Club v. Commissioner,* 497 U.S. at 161. But here the regulation in question permits an organization described in section 512(a)(1) to run an advertising business more cheaply than a competing commercial enterprise because the organization could reduce its taxable income from the advertising business by deducting expenses from the editorial portion of a magazine. Consequently, the regulation may be said to frustrate the policy behind the treatment of organizations referred to in section 512(a)(1). Therefore, respondent's policy argument offers no reason to distinguish between the application of the regulation to organizations described in section 512(a)(1) and organizations described in section 512(a)(3)(A).

Moreover, the parties have agreed as to all items of petitioner's gross income from unrelated business activity. As petitioner points out, there are safeguards in section 1.512(a)–1(f)(3) and (4), Income Tax Regs., which provide a formula by which a portion of an organization's exempt function income from membership receipts can be treated as circulation income, to remedy the frustration of legislative policy respondent complains of; i.e., the subsidization of petitioner's social functions through the organization's taxable income-creating activities.[10] Respondent contends, in the

---

[10] Sec. 1.512(a)–1(f)(3), Income Tax Regs., provides, generally, that, where the right to receive an exempt organization periodical is associated with membership for which membership dues are received by the organization, circulation income (UBTI) includes that portion of membership dues allocable to the periodical. Sec. 1.512(a)–1(f)(4), Income Tax Regs., provides rules to determine the allocable portion of membership receipts that constitutes circulation income (UBTI). For example, under sec. 1.512(a)–1(f)(4)(i), Income Tax Regs., where 20 percent or more of the organization's periodical is sold to nonmembers of the organization, the subscription price charged to such nonmembers determines the amount of dues paid by members that would be imputed to be circulation income (UBTI). This regulation also provides an allocation formula to cover other situations as, for example, where members of the organization receiving the periodical pay dues that exceed the dues paid by those members who do not receive the periodical.

reply brief, that "to apply these provision [sic] to petitioner would still allow member readership costs to be deducted from nonmember advertising income and result in the petitioner's untaxed advertising income subsidizing its member activities." However, even if respondent is correct, respondent has, through regulations, set out formulas by which the public policy enumerated by Congress as to social clubs is to be safeguarded. If those regulations do not adequately safeguard the legislative policy, then perhaps the regulations should be revised. That is not a matter for this Court to decide. The Court, therefore, holds that section 1.512(a)–1(f), Income Tax Regs., is applicable to petitioner as a section 501(c)(7) organization. Accordingly, all of petitioner's publication expenses are deductible. Petitioner is sustained on this issue.

The parties stipulated that, in the event the Court determined that section 1.512(a)–1(f), Income Tax Regs., was applicable to social clubs, as defined in section 501(c)(7), and if all of petitioner's publication expenses would be deductible in the computation of its UBTI, petitioner's tax liabilities for the taxable years ending June 30, 1987 and 1988, would be $589 and $53, respectively. Accordingly,

> *A decision will be entered specifying deficiencies of $589 and $53 in petitioner's income taxes for the taxable years ending June 30, 1987, and June 30, 1988, respectively.*