**DUMANN REALTY, LLC, Plaintiff,**

v.

**FREDERICK FAUST, Defendant.**

**No. 09 Civ. 7651(VM).**

United States District Court,
S.D. New York.

April 12, 2010.

Ronald A. Sarno, Sarno & Defelice, New York, NY, for Dumann Realty.

Mia Mary Meloni, Cozen O'Connor, The Atrium, Philadelphia, PA, for Frederick Faust.

Ronald A. Sarno, Sarno & Defelice, New York, NY, for Profitechnic Capital Ltd., Lawrence Luk, Mac Luk.

### *DECISION AND ORDER*

VICTOR MARRERO, District Judge.

Plaintiff Dumann Realty, LLC ("Dumann") brought this action, naming Frederick Faust ("Faust") as defendant. Dumann's amended complaint, filed on January 13, 2010 (the "Amended Complaint" or "Am. Compl."), asserts eight claims under New York State law arising from Faust's alleged failure to: (1) make required capital contributions, (2) pay amounts he promised to pay, and (3) abide by a contractual departure-notice provision. Faust now moves to dismiss the Amended Complaint pursuant to: Federal Rules of Civil Procedure 12(b)(7) ("Rule 12(b)(7)") for failure to join necessary and indispensable parties under Federal Rule of Civil Procedure 19 ("Rule 19"), and 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim upon which relief can be granted. For the reasons stated below, Faust's motion is DENIED, although the Court directs Dumann to join the necessary parties to this action.

### I. *BACKGROUND*[1]

Richard Du ("Du"), Mac Luk ("Luk"), and Faust, all of whom are New York State

1. When reviewing a motion to dismiss under Rule 12(b)(7), the Court may consider documents

licensed real estate brokers, formed Dumann in 2004 as a real estate brokerage firm. At that time, Du, Luk, and Faust entered into an operating agreement (the "Operating Agreement"), delineating their duties as the three members of the company. Approximately five years later, on March 8, 2009, Faust withdrew from the company, setting into motion the events that led to this action.

The Operating Agreement states:

A member may withdraw as a member of [Dumann] with the vote or written consent of at least two-thirds in interest of the members, other than the member who proposes to withdraw as a member. If such consent is not given, a member may withdraw upon not less than six months prior written notice to [Dumann].... Should such a breach occur, then the withdrawing member may be liable for damages as a result thereof.

(Operating Agreement Art. III, § 10.) According to Dumann, Faust withdrew without the consent of Du and Luk, who were the only other members of Dumann, and without providing written notice six months in advance. Dumann alleges that Faust's premature withdrawal caused Dumann to lose $400,000 in revenue.

Dumann also claims that Faust owes it money because he failed to provide both (1) required capital contributions under the Operating Agreement and (2) funds that he orally promised to pay pursuant to a promise he made at a departure meeting (the "Departure Meeting Promise"). With regard to the former, the Operating Agreement states that Faust "shall be personally liable for the payment of his Capital Contribution or for any other matter which may be set forth in this Operating Agreement." (*Id.* Art. III, § 5.) Dumann claims that Faust has not contributed his required $494,986.98 of capital.

Relating to the latter, Du, Luk, and Faust met on or about March 12, 2009 after Faust notified Dumann that he would depart from the company. At that meeting, Faust allegedly made the Departure Meeting Promise, pledging to Du and Luk that he would pay Dumann the one-third share of the estimated $1,800,000 ($600,000) that he allegedly owed the company as one of three equal partners. Faust never fulfilled the Departure Meeting Promise.

Two of the three amounts claimed in damages by Dumann, the $494,986.98 of capital contributions and the $600,000 at issue in the Departure Meeting Promise, implicate certain loan obligations. According to Faust, during the genesis of Dumann, Du and Luk advised Faust that Luk, Luk's father (identified in the Amended Complaint as "Mr. Luk"), and Profitechnic Capital Limited (a company owned by Mr. Luk) (collectively, the "Lenders") would be providing Dumann with loans from time to time. (*See* Declaration of Frederick Faust, dated February 3, 2010 ("Faust Decl.") ¶ 9.) While the facts about the loans remain murky at this stage, it is clear that the Lenders provided capital to Dumann that, according to Dumann, required repayment. (*See id.* ¶ 5, Ex. F.) For example, the Operating Agreement provides for a loan from Luk to Dumann to capitalize the company. (*See* Operating Agreement Rider and Acknowledgment; Faust Decl. ¶¶ 18–21, Exs. C, D, & F.)

Before filing the Amended Complaint, Dumann contended that Faust was personally liable to the Lenders for some portion of Dumann's debt obligations. For example, in two pre-litigation demand letters, dated May 13 and July 14, 2009 (collectively, the "Demand Letters"), Dumann asserted that Faust was "personally responsible for one-third of the [company's] outstanding unpaid debts, which total $1,800,000 with [his] one-third share set at $600,000." (Faust Decl. Ex. G., Ex. F.) Also, the initial complaint in this matter, filed on September 2, 2009 (the "Initial Complaint"), is replete with allegations

and facts outside the pleadings. *See Continental Kraft Corp. v. Euro–Asia Development Group, Inc.,* No. 97 CV 0619, 1997 WL 642350, at *6 (E.D.N.Y. Sept.8, 1997). Except where otherwise noted and provided for the purposes of the Court's 12(b)(7) analysis, the facts below are taken from the Amended Complaint, and the documents attached to it or incorporated by reference. The Court accepts these facts as true for the purposes of ruling on a motion to dismiss. *See Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 180 (2d Cir.2008). Other than where specifically referenced, no further citation to these sources will be made.

that Faust is personally liable for the repayment of loans made to Dumann by the Lenders. (*See, e.g.*, Initial Complaint ¶¶ 17–21, 29–30, 34–41, 44, 54–55.)[2]

At issue now are the claims in the Amended Complaint that arise out of the alleged failures relating to Faust's (1) capital contribution, (2) Departure Meeting Promise, and (3) premature departure. These alleged improprieties arise from the same set of facts as those stated in the Initial Complaint, but Dumann now characterizes the underlying amounts in dispute as amounts owed by Faust to the company, as distinct from any repayment obligation to the Lenders. Further, the Amended Complaint specifically asserts Dumann's legal conclusion—seemingly at odds with the representations Dumann made to Faust in its Demand Letters and to the Court in its Initial Complaint—that Faust has no personal liability to the Lenders. Despite Dumann's prior assertions as to Faust's personal liability to the Lenders, it now argues that the Lenders are not necessary and indispensable parties because they cannot maintain an action against Faust for Dumann's loan obligations.

## II. *ROLE 12(b)(7) MOTION*

### A. *LEGAL STANDARD*

Rule 12(b)(7) provides that a party may move to dismiss a complaint for "failure to join a party under Rule 19." Rule 19 "sets forth a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party." *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir.2000). "First, the court must determine whether an absent party belongs in the suit, i.e., whether the party qualifies as a 'necessary' party under Rule 19(a)." *Viacom*, 212 F.3d at 724 (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 124, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968)). Rule 19(a) provides that an absent party is necessary where:

(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a).

Second, after the court "makes a threshold determination that a party is necessary under Rule 19(a)," it must determine whether joinder of the absent party is "feasible for jurisdictional or other reasons." *Viacom*, 212 F.3d at 725; *see also* Fed.R.Civ.P. 19(b). "If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed.R.Civ.P. 19(b).

### B. *ANALYSIS*

Faust asserts that the Lenders are necessary and indispensable parties to Dumann's suit because its claims for $494,986.98 in capital contributions and $600,000 from the Departure Meeting Promise involve loan amounts at least arguably owed by Faust to the Lenders, leaving Faust potentially exposed to "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations . . . ." Fed.R.Civ.P. 19(a). Dumann does not set forth much opposition to Faust's arguments that the Lenders are necessary and indispensable parties. Its sole opposition to Faust's contentions is that the Lenders are not necessary because they may not maintain a cause of action to hold Faust personally liable for Dumann's loan obligations. While it is true, as Dumann argues, that the causes of action in the Amended

---

**2.** Upon reviewing the Initial Complaint and Faust's initial motion to dismiss, the Court held a telephone conference with the parties on December 21, 2009, to address its concern that the Initial Complaint sought to enforce Faust's purported personal obligations to repay the Lenders, yet did not join the Lenders to the action. The Court granted leave for Dumann to file an amended pleading, which the company represented would cure the defects raised by Faust and the Court.

Complaint concern only the obligations of Faust to Dumann and not his direct obligations to the Lenders, it is also accurate that the Lenders, who are not bound by Dumann's representations and who may take a different view, could assert an action against Faust. Surely Dumann can contemplate such a suit, given that it itself asserted in the Demand Letters and Initial Complaint that Faust had personal liability to the Lenders for loans made to Dumann. Thus, Dumann's previous representations and claims belie its lone counterargument.

■ A review of the Initial Complaint, Dumann's Demand Letters, the Amended Complaint, and statements in Dumann's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the First Amended Complaint, dated March 2, 2010 (the "Opposition Brief" or "Opp. Br.") also run counter to Dumann's assertions. (*See, e.g.,* Initial Complaint ¶ 17–21, 29–30, 34–41, 44, 54–55; Faust Decl. ¶¶ 67–68, Exs. F. & G.; Opp. Br. at 6 ("Faust is fully aware that these loan [sic] remained unpaid at the time of his departure."); Faust Decl. ¶¶ 18–21, Exs. C, D, & F. (reflecting loan amounts in the Operating Agreement's Rider and Acknowledgment that Dumann received from Luk that may be tied to the amount Faust allegedly owes for capital contributions).) The Court is therefore persuaded that Dumann aims to recover amounts that the Lenders may also claim to be owed by Faust, and that Faust faces the prospect of litigation with the Lenders, which could lead to "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" if he were found liable and required to pay damages to the company. Fed.R.Civ.P. 19(a). As such, the Court finds that the Lenders are necessary parties to this litigation.

In its Opposition Brief, Dumann consents to add the Lenders should the Court find them to be necessary and indispensable parties. The Court directs Dumann to join the Lenders pursuant to both Rule 19(a)(2) and to Dumann's representation to the Court that it would do so. Given the Court's ruling and Dumann's representation consenting to join the Lenders, the Court need not "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed" under Rule 19(b).

## III. *RULE 12(b)(6) MOTION*

In addition to moving for dismissal under Rule 12(b)(7), Faust also moves pursuant to Rule 12(b)(6) to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted. In assessing a motion under Rule 12(b)(6), dismissal of a complaint is appropriate if the plaintiff has failed to offer factual allegations sufficient to render the asserted claim plausible on its face. *See Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To state a facially-plausible claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. The task of a court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Publ. Offering Secs. Litig.,* 383 F.Supp.2d 566, 574 (S.D.N.Y.2005) (quotation marks and citation omitted).

For the purposes of deciding a motion to dismiss, the Court accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the plaintiff's favor. *See Iqbal,* 129 S.Ct. at 1950 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002) (all reasonable inferences shall be drawn in plaintiff's favor). However, allegations that are no more than legal conclusions "are not entitled to the assumption of truth." *Iqbal,* 129 S.Ct. at 1950.

■ Dumann asserts eight causes of action under New York law, all seeking to

make it whole for the damages it allegedly suffered that arise out three failures on Faust's part: to (1) make allegedly-required capital contributions; (2) fulfill the Departure Meeting Promise; and (3) abide by the six-months' notice provision before departing the company. Dumann claims that its losses involving these three alleged wrongs are, respectively, $494,986.98, $600,000, and $400,000. Upon review of the Amended Complaint and the arguments made in the submissions on the motion to dismiss, the Court finds that the current dispute is highly fact-intensive and not appropriate for dismissal at the pleading stage. Dumann has met its burden under Rule 8 of the Federal Rules of Civil Procedure in stating facts that, accepted as true for the purposes of this motion and "draw[ing] all reasonable inferences in [Dumann's] favor," *id.*, plausibly support its claims for relief.

For example, Dumann's claim for breach of the Operating Agreement because of Faust's alleged failure to fund his share of capital contributions survives at the pleading stage. According to Dumann, Du, Luk, and Faust each had a contractual duty to fund a third of the capital for Dumann. The obligation for this contribution is contained in Article III, § 5 of the Operating Agreement, which states that Faust "shall be personally liable for the payment of his Capital Contribution...." (Operating Agreement Art. III, § 5.) Dumann further alleges that Faust had an obligation to contribute $494,986.98 of capital, but failed to make any contribution. Accordingly, the Court finds that Dumann has alleged sufficient facts to make this claim plausible.

As another example, with regard to Faust's alleged improper departure, the Operating Agreement required Faust to either receive the consent of Du and Luk or provide written notice six months before his departure. (*See* Operating Agreement Art. III, § 10.) This provision also states that if breached, "then the withdrawing member may be liable for damages as a result thereof." (*Id.*) Dumann alleges that Faust failed to procure the requisite consent or provide the mandatory notice. (*See* Am. Compl. ¶ 17 ("On March 8, 2009 Faust withdrew from Dumann without the consent of the other two Members and without providing six months advanced notice in writing.").) Dumann contends that this breach of the Operating Agreement caused it $400,000 in lost revenue. (*See* Opp. Br. at 19.) Accordingly, the Court finds that Dumann states a plausible breach of contract claim, albeit with outstanding factual issues to be developed through discovery, and thus denies Faust's motion to dismiss under Rule 12(b)(6).

## II. *ORDER*

For the preceding reasons, it is hereby

**ORDERED** that the motion (Docket No. 20) of defendant Frederick Faust to dismiss the complaint of plaintiff Dumann Realty, LLC ("Dumann") is DENIED; and it is further

**ORDERED** that Dumann is directed, by April 30, 2010, to further amend the complaint so as to add Mac Luk, Mr. Luk, and Profitechnic Capital Limited as parties to the action.

**SO ORDERED.**